# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

## (ROANOKE DIVISION)

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**DEC 19 2016**

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA; THE STATE OF ALABAMA, EX REL. LUTHER STRANGE, in his official capacity as the Attorney General of Alabama; ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT; THE COMMONWEALTH OF KENTUCKY, ENERGY AND ENVIRONMENT CABINET; THE STATE OF TENNESSEE, EX REL. HERBERT H. SLATERY III, in his official capacity as the Attorney General and Reporter of Tennessee; and THE COMMONWEALTH OF VIRGINIA,<br><br>        Plaintiffs,<br><br>   v.<br><br>SOUTHERN COAL CORPORATION; JUSTICE COAL OF ALABAMA, LLC; A & G COAL CORPORATION; FOUR STAR RESOURCES LLC; INFINITY ENERGY, INC.; KENTUCKY FUEL CORPORATION; SEQUOIA ENERGY, LLC; VIRGINIA FUEL CORPORATION; NATIONAL COAL, LLC; PREMIUM COAL COMPANY, INCORPORATED; S AND H MINING INC.; AIRWAY RESOURCES, L.L.C.; BADEN RECLAMATION COMPANY; BLACK RIVER COAL, LLC; CHESTNUT LAND HOLDINGS, LLC; MEG-LYNN LAND COMPANY, INC.; NINE MILE MINING, INC.; CANE PATCH MINING CO., INC.; BLUESTONE RESOURCES, INC.; DYNAMIC ENERGY, INC.; GREENTHORN, LLC; JUSTICE HIGHWALL MINING, INC.; NATIONAL RESOURCES, INC.; NUFAC MINING COMPANY, INC.; PAY CAR MINING, INC.; SECOND STERLING CORP.; AND NEWGATE DEVELOPMENT OF BECKLEY LLC<br><br>        Defendants. | Civil Action No. 7:16-cv-00462-GEC<br><br>CONSENT DECREE |

## TABLE OF CONTENTS

I.      BACKGROUND .................................................................................................1
II.     JURISDICTION AND VENUE ........................................................................3
III.    APPLICABILITY ...............................................................................................5
IV.    DEFINITIONS ....................................................................................................8
V.     CIVIL PENALTY .............................................................................................16
VI.    GENERAL COMPLIANCE REQUIREMENTS ...........................................18
VII.   INJUNCTIVE RELIEF ...................................................................................25
VIII.  FINANCIAL ASSURANCE ...........................................................................40
IX.    REPORTING AND CERTIFICATION REQUIREMENTS .......................42
X.     STIPULATED PENALTIES ...........................................................................46
XI.    FORCE MAJEURE .........................................................................................51
XII.   DISPUTE RESOLUTION ...............................................................................54
XIII.  INFORMATION COLLECTION AND RETENTION ................................57
XIV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ...................59
XV.   COSTS ..............................................................................................................61
XVI.  NOTICES .........................................................................................................61
XVII. RETENTION OF JURISDICTION ..............................................................66
XVIII. MODIFICATION ............................................................................................66
XIX.  TERMINATION ..............................................................................................67
XX.   PUBLIC PARTICIPATION ...........................................................................68
XXI.  SIGNATORIES/SERVICE .............................................................................68
XXII. INTEGRATION ..............................................................................................69
XXIII. FINAL JUDGMENT .......................................................................................69
XXIV. APPENDICES ..................................................................................................69

Case 7:16-cv-00462-GEC   Document 21   Filed 12/19/16   Page 2 of 86   Pageid#: 996

# I.  BACKGROUND

A.      Concurrent with the Date of Lodging of this Consent Decree, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"); the State of Alabama, *ex rel*. Luther Strange, in his official capacity as the Attorney General of Alabama and the Alabama Department of Environmental Management ("ADEM"); the Commonwealth of Kentucky, Kentucky Energy and Environment Cabinet; the State of Tennessee, *ex. rel*. Herbert H. Slatery III, Attorney General and Reporter of Tennessee, at the request and on behalf of the Tennessee Department of Environment and Conservation; and the Commonwealth of Virginia, by and through the Department of Mines, Minerals and Energy (collectively, "States") have filed a Complaint in this action against Southern Coal Corporation; Justice Coal of Alabama, LLC; A & G Coal Corporation; Four Star Resources LLC; Infinity Energy, Inc.; Kentucky Fuel Corporation; Sequoia Energy, LLC; Virginia Fuel Corporation; National Coal, LLC; Premium Coal Company, Incorporated; S and H Mining Inc.; Airway Resources, L.L.C.; Baden Reclamation Company; Black River Coal, LLC; Chestnut Land Holdings, LLC; Meg-Lynn Land Company, Inc.; Nine Mile Mining, Inc.; Cane Patch Mining Co., Inc.; Bluestone Resources, Inc.; Dynamic Energy, Inc.; Greenthorn, LLC; Justice Highwall Mining, Inc.; National Resources, Inc.; Nufac Mining Company, Inc.; Pay Car Mining, Inc.; Second Sterling Corp.; and Newgate Development of Beckley LLC (collectively, "Defendants") pursuant to the following statutes: (1) Sections 309(b) and (d) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. §§ 1319(b), (d); and the relevant state statutes: the Alabama Water Pollution Control Act ("AWPCA"), Code of Alabama, 1975 Ala. Code § 22-22-9(m), and the Alabama Environmental Management Act, Code of Alabama, 1975,

1

Ala. Code § 22-22A-5(18); Kentucky Revised Statutes ("KRS") §§ 224.99-010, 224.99-020 ; the Tennessee Water Quality Control Act ("TWQCA"), Tenn. Code Ann. §§ 69-3-101 to -148; and the Virginia State Water Control Law ("SWCL"), Va. Code §§ 62.1-44.2 to -44.34:28. The Complaint alleges that the Defendants have violated the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued to them by the relevant State of Alabama, Commonwealth of Kentucky, State of Tennessee, Commonwealth of Virginia, and State of West Virginia pursuant to the EPA-approved permit program under Section 402 of the CWA, 33 U.S.C. § 1342(a), and the relevant AWPCA, Ala. Code § 22-22-9; KRS § 224.16-050; TWQCA, Tenn. Code Ann. § 69-3-105(h); Va. Code § 45.1-254 and/or W. Va. Code § 22-11-4(a)(16). The Complaint also alleges that Defendants, National Coal, LLC, and/or Premium Coal Company, Incorporated, discharged pollutants to waters of Tennessee and waters of the United States from point sources without NPDES permits in violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) and TWQCA, Tenn. Code Ann § 69-3-108.

B.     The Complaint further alleges that Defendants National Coal, LLC and Premium Coal Company, Incorporated failed to comply with EPA's requests for information in violation of Section 308(a) of the CWA, 33 U.S.C. § 1318(a).

C.     The United States has reviewed Financial Information submitted by Defendants to determine Defendants' financial ability to pay a civil penalty in this action and to finance the requirements of this Consent Decree. The United States has determined that Defendants have limited financial ability to pay.

D.     Section VIII of this Decree requires Defendants to provide financial assurance for the Work if Defendants default on their obligation to perform such Work. Defendants are

providing financial assurance by means of an Irrevocable Letter of Credit and a Standby Trust. The Applicant for the Letter of Credit is the Environmental Fund, LLC, which is also the Grantor for the Standby Trust. The Environmental Fund, LLC is not named in the Complaint, but rather is joined to this Decree as described in Section II (Jurisdiction and Venue). The Trustee of the Standby Trust and the bank that issues the Letter of Credit are also joined to this Decree as described in Section II (Jurisdiction and Venue).

E. Defendants do not admit any liability to the United States, the States, any governmental body, or any other organization or person arising out of the transactions or occurrences alleged in the Complaint nor do Defendants admit any fact or legal conclusion alleged in the Complaint.

F. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the Parties and over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b). This Court has jurisdiction over Environmental Fund, LLC as Grantor, United Bank, Inc. as Trustee of the Standby Trust, and Carter Bank and Trust as the issuing bank for the Letter of Credit, pursuant to the All Writs Act, 28 U.S.C. § 165, and Fed. R. Civ. P. 19(a).

2. The United States has authority to bring this action on behalf of the Administrator

3

of EPA under Section 506 of the CWA, 33 U.S.C. § 1366. The Attorney General of the State of Alabama and ADEM are authorized to enforce the provisions of the AWPCA by the Alabama Environmental Management Act, Ala. Code § 22-22A-5(12), (18). The Commonwealth of Kentucky's Office of General Counsel of the Energy and Environment Cabinet has the authority to bring this action pursuant to KRS Section 224.99-020. The Tennessee Attorney General has the authority to bring this suit on behalf of the State of Tennessee in accordance with Tenn. Code Ann. § 8-6-109 and the common law of Tennessee. The VA DMME is authorized under Va. Code §§ 62.1-44.15(8c) and 45.1-254 to file suit against violators.

3.     Venue lies in the Western District of Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the judicial district in which many of the Defendants are located, reside, and/or are doing business, conducting surface coal mining operations, and/or in which many of the surface coal mining operations are located and the significant number of the violations alleged in the Complaint occurred.

4.     For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants, and consent to venue in this judicial district. Environmental Fund, LLC, United Bank, Inc., and Carter Bank & Trust do not object to the Court's exercise of subject matter or personal jurisdiction or to venue for purposes of enforcing the applicable Consent Decree obligations of Grantor, Trustee, and the issuing bank for the LOC, respectively.

5.     For purposes of this Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§

4

1319(b) and (d); and the relevant provisions of AWPCA at Ala. Code § 22-22-9; the Alabama

Environmental Management Act at Ala. Code § 22-22A-5(18); KRS § 224.99-020; TWQCA,

Tenn. Code Ann. §§ 69-3-115 and 69-3-117; and Va. Code §§ 62.1-44.21, 44.23, and 44.32.

### III. APPLICABILITY

6. The obligations of this Consent Decree apply to and are binding upon the United

States and the States, and upon Defendants, the Grantor, the Trustee, the issuing bank for the

Letter of Credit, and any successors, assigns, or other entities, or persons otherwise bound by

law.

7. The provisions of this Consent Decree apply to Facilities and Future Facilities

located in Alabama, Kentucky, Tennessee, Virginia, and West Virginia.

8. Defendants hereby agree that they are bound to perform duties scheduled to occur

by this Consent Decree before the Effective Date. In the event the United States withdraws from

or withholds consent to this Consent Decree in accordance with Paragraph 140, or the Court

declines to enter this Consent Decree, then the preceding requirement to perform duties

scheduled to occur before the Effective Date shall terminate.

9. No transfer of ownership or operation of any Facility shall relieve Defendants of

their obligations to ensure that the terms of the Decree are implemented at that Facility, except as

provided in Paragraphs 10-11 below. At least 60 Days prior to any proposed transfer of

ownership or operation of a Facility, Defendants shall provide to the United States: (a) written

notice of the prospective transfer; (b) the certification required by Paragraph 10.c; (c) a copy of

all Database entries for the past 6 months of audits and inspections conducted at the Facility

under Paragraphs 42 (Environmental Audits), 43 (Treatment System Audits), and 45 (Outlet

5

Inspections); and (d) a copy of all Database entries relating to Effluent Limit Violations during the preceding 12 months at any Outlets at the Facility to be transferred. If the Facility to be transferred will remain subject to some of the terms of this Decree after transfer, pursuant to Paragraph 10, Defendants shall provide a copy of this Consent Decree to the proposed transferee at least 30 Days prior to any transfer of ownership or operation of a Facility. Any attempt to transfer ownership or operation of a Facility without complying with this Paragraph constitutes a violation of this Decree.

10. Upon the lawful and legitimate sale of a Facility (whether such sale is structured as a transfer of assets or purchase and sale of equity ownership) to an unaffiliated, bona fide purchaser, in full compliance with the transfer provisions of this Consent Decree, and upon compliance with Paragraph 9 above, neither the purchaser nor the Facility shall be subject to the terms of this Decree, and Defendants' remaining obligations under the Consent Decree for that particular Facility will terminate, subject to the following conditions:

a. No transfer of ownership or operation of any Facility shall relieve Defendants of their obligations to make payments under Sections V (Civil Penalty) and X (Stipulated Penalties) (payment of all stipulated penalties incurred until transfer).

b. Defendants shall not seek to transfer any Facility until an Environmental Audit and a Treatment System Audit have been performed at that Facility, in accordance with the requirements of Paragraphs 42 (Environmental Audits) and 43 (Treatment System Audits) of the Decree, and the applicable audit reports for the Facility have been received by EPA, DOI, and the States. For any alterations, maintenance, and/or corrective measures under Paragraphs 42 (Environmental Audits), 43 (Treatment System Audits), 45 (Outlet Inspections) or 47 (Violation

6

Response), that have been identified with respect to that Facility at any time up until the consummation of transfer, Defendants shall complete those obligations prior to transfer or shall remain responsible for completing such obligations after the transfer.

   c. Before any transfer permitted under Paragraph 9 and this Paragraph 10 can be effective, Defendants shall certify to the United States and the States that they are in compliance with all applicable provisions of the Consent Decree related to the Facility and that all provisions of Paragraph 9 and of this Paragraph 10 have been fully complied with for the Facility; or that Defendants have complied with all provisions of Paragraph 9 and will continue to be responsible for completing any obligations identified in this Paragraph 10 after transfer. If obligations are to be completed after transfer, Defendants shall indicate in their certification which obligations will be completed after transfer and provide a schedule for completion. Once completed, Defendants shall submit a certification to that effect to the United States and States.

  11. Defendants may not attempt to avoid compliance with this Consent Decree at any Facility by transferring such Facility to a direct or indirect subsidiary, affiliate, or an entity that shares common ownership with any other Defendant. Paragraph 10 is inapplicable to any such transfer.

  12. Notwithstanding Paragraphs 9-10, the terms, conditions, and obligations of this Consent Decree shall survive any reorganization, alteration or change of Defendants' corporate structure and shall be fully binding on any entity or organization that is affiliated with Defendants as a result of any such reorganization, alteration or change of Defendants' corporate structure. The terms, conditions, and obligations of this Consent Decree shall also be fully binding on any entity or organization that is subject to successor liability for Clean Water Act violations at the

7

Facility.

13.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree. Defendants shall ensure that any obligations in this Decree that are to be performed by any of their officers, directors, employees, agents, or contractors shall be performed as set forth in this Decree, and any failure by such person to perform these obligations as such shall be construed to be a violation by Defendants of this Decree, and subject to stipulated penalties.

## IV.  **DEFINITIONS**

14.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the CWA have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

    a.     "Alabama" means the State of Alabama and the Alabama Department of Environmental Management.

    b.     "Applicable Environmental Laws" means the following federal statutes and equivalent State laws and regulations: CWA; Safe Drinking Water Act; and the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201–1328. ("SMCRA") as it relates to the operation, monitoring, and/or maintenance of discharges, drainage and sediment control systems or otherwise relates to water quality.

8

c.  "Applicant" means Environmental Fund, LLC, and the Applicant for the Letter of Credit.  The Environmental Fund, LLC is also the Grantor for the Standby Trust Agreement.

d.  "Cessation Orders" or "COs" means cessation orders issued to Defendants under SMCRA as described in 30 C.F.R. § 843.11; KRS § 350.130; Va. Code § 45.1-245 and 4 Va. Admin. Code § 25-130-843.11; and West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-17.

e.  "Complaint" means the complaint filed by the United States and the States in this action concurrent with the lodging of this Decree.

f.  "Consent Decree" or "Decree" or "CD" means this Decree and all appendices attached hereto (listed in Section XXIV).

g.  "Daily Violation" means (i) any exceedance of a maximum daily discharge limitation for any parameters set forth in Defendants' NPDES Permits, as determined by a DMR Sample, or (ii) any failure to attain a pH measurement in accordance with the daily discharge limitation set forth in Defendants' NPDES Permits, as determined by a DMR Sample.

h.  "Database" or "Compliance Database" or means the electronic database created and maintained pursuant to Paragraphs 48-54.

i.  "Database Evaluation" or "Compliance Database Evaluation" means the information technology evaluation of the Compliance Database required by Paragraph 57.

j.  "Database Evaluator" means the approved third-party consultant required by, and with the duties required by, Paragraph 57.

9

k.    "Date of Lodging" means the date this Consent Decree is filed with the Court to commence the public comment period pursuant to 28 C.F.R. § 50.7.

l.    "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

m.    "Defendants" means the defendants named in the Complaint filed in this matter and listed in Paragraph I.A, or one or more such defendant(s) as applicable.

n.    "DOI" means the United States Department of the Interior and any of its successor departments or agencies.

o.    "Diagnostic Sampling" means sampling to determine necessary treatment measures and/or to evaluate the effectiveness of violation response actions taken.  Such sampling of discharges need not occur at the location designated for required sampling pursuant to the respective permit or be taken in accordance with approved test procedures under 40 C.F.R. Part 136.

p.    "Discharge Monitoring Report Sample" or "DMR Sample" means any sample taken at an Outlet and in accordance with approved test procedures under 40 C.F.R. Part 136.

q.    "Effective Date" shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

10

r.　　"Effluent Limit Violation" means a Daily Violation, Monthly Violation, or Quarterly Violation.

s.　　"Environmental Management System" or "EMS" means the integrated system created for Defendants by the EMS Consultant to standardize and formalize practices and programs used to maintain, track, and improve environmental performance.

t.　　"EMS Audit" means the audit conducted by the EMS Auditor pursuant to Paragraph 40.

u.　　"EMS Auditor" means the approved third-party consultant required by Paragraph 39, with the duties required by Paragraph 40.

v.　　"EMS Audit Report" means the report required by Paragraph 40(b).

w.　　"EMS Audit Response and Action Plan" means the plan required by Paragraph 41.

x.　　"EMS Consultant" means the approved third-party consultant required by Paragraph 34, with the duties required by Paragraphs 34 and 35.

y.　　"EMS Manual" means the document, and all subsequent amendments thereto, that describes and documents the integrated EMS developed by the EMS Consultant for the Defendants, and which, as noted by Paragraph 35, was approved by EPA on July 20, 2016, after consultation with the States.

z.　　"Environmental Audit" means an audit conducted at each Facility by a third-party consultant, pursuant to the requirements of Paragraphs 42.

aa.　　"Environmental Audit Report(s)" or "EA Report(s)" means the report(s) required by Paragraph 42.c.

11

bb.     "Environmental Auditor" means the approved third-party consultant required by, and with the duties required by, Paragraph 42.

cc.     "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

dd.     "Facility" or "Facilities" mean(s) mining operations (including but not limited to, surface and underground mines, coal processing and preparation plants, coal refuse facilities, coal transportation facilities, reclamation areas, Reclaimed Sites, and all associated surface coal mining and reclamation operations) subject to SMCRA or the CWA that, during the term of this Decree, are owned and/or operated by Defendants, their direct or indirect subsidiaries or affiliates, or an entity that shares common ownership with any other Defendants, and were ever subject to or should have been subject to permitting under SMCRA and/or NPDES.

ee.     "Failure to Sample Violation" means any failure to conduct daily, monthly, or quarterly sampling or any monitoring as set forth in the Defendants' NPDES Permits.

ff.     "Financial Information" (when capitalized) means the documentation identified in Appendix A, which was submitted to the United States by Carey, Scott, Douglas & Kessler, PLLC pursuant to a confidentiality agreement, on behalf of Southern Coal and Affiliated Companies, and which Defendants assert includes Confidential Business Information.

gg.     "Future Facilities" means any Facilities that come to be permitted and/or operated after the Date of Lodging.

hh. "Grantor" means Environmental Fund, LLC, and the Grantor for the Standby Trust Agreement. The Environmental Fund, LLC is also the Applicant for the Letter of Credit.

ii. "Kentucky" means the Commonwealth of Kentucky, by and through the Kentucky Energy and Environment Cabinet.

jj. "Letter of Credit" or "LOC" means the Irrevocable Standby Letter of Credit provided to EPA by Carter Bank & Trust as required by Paragraph 64 and Appendix C.

kk. "Monthly Violation" means any exceedance of a monthly average discharge limitation for any parameters set forth in Defendants' NPDES Permits, as determined by a DMR Sample(s).

ll. "NOVs" means notices of violation or non-compliance issued to Defendants under 30 C.F.R. § 843.12; Kentucky Surface Mining Act, KRS § 350.130; the Virginia Coal Surface Mining Control and Reclamation Act, Va. Code Ann. § 45.1-245; and/or the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-17 (2004). "NOVs" also means notices of violation or noncompliance issued to Defendants under applicable federal and State water quality laws and associated regulations, including the CWA; AWPCA; ADEM Ala. Admin. Code r. 335-6-6; Kentucky Revised Statute Chapter 224, KRS § 224.10, Tennessee Water Quality Control Act, Tenn. Code Ann. § 69-3-101 to -148; Virginia Code § 45.1-254, and West Virginia Water Pollution Control Act ("WVPCA"), W. Va. Code § 22-11-8.

mm. "NPDES Permit" means a State or federally-issued permit pursuant to the National Pollutant Discharge Elimination System as defined in 40 C.F.R. § 122.2, or equivalent state law pursuant to an approved state program.

13

nn.     "Outlet" means an NPDES discharge point permitted to or operated by any Defendant, except for newly permitted discharge points that have not begun to discharge.

oo.     "Outlet Inspection" means the field evaluation of conditions at an Outlet conducted pursuant to the requirements of Paragraph 45 of this Consent Decree.

pp.     "Paragraph" means a portion of this Decree identified by an Arabic numeral.

qq.     "Parties" means the United States, the States, and Defendants.

rr.     "Quarterly Violation" means any exceedance of a quarterly average discharge limitation for any parameters set forth in Defendants' NPDES Permits, as determined by a DMR Sample(s).

ss.     "Reclaimed Sites" means Facilities that have been regraded to "Phase I" bond release standards under SMCRA, 30 U.S.C. § 1201–1328.

tt.     "Root Cause Analysis" means the process for identifying the underlying cause of any non-compliance with an Applicable Environmental Law and subsequent steps to be taken to address such non-compliance. It includes the identification of precipitating events; analysis procedures; and emergency response plans that describe how the cause of non-compliance will be identified, key processes will be repaired or replaced in the event of a failure, and regulatory reporting will be undertaken. It will also identify corrective and preventive actions to be taken.

uu.     "Section" means a portion of this Decree identified by a Roman numeral.

14

vv.    "SMCRA Permit" means a state or federally-issued permit pursuant to the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1256, or equivalent state law pursuant to an approved state program.

ww.    "Standby Trust Agreement" or "Standby Trust" or "Trust" means the Standby Trust Agreement entered into between Environmental Fund, LLC and United Bank, Inc. as required by Paragraph 65 and Appendix D.

xx.    "States" means Alabama, Kentucky, Tennessee, and Virginia.

yy.    "Tennessee" means the State of Tennessee and the Tennessee Department of Environment and Conservation.

zz.    "Treatment System Audit" or "TSA" means the audit required by Paragraph 43.

aaa.    "Treatment System Auditor" means an employee of Defendants meeting the requirements of Paragraph 43.a who performs Treatment System Audits and associated duties.

bbb.    "Trustee" means United Bank, Inc., which will enter into the Standby Trust Agreement with the Applicant.

ccc.    "United States" means the United States of America, acting on behalf of EPA.

ddd.    "Virginia" means the Commonwealth of Virginia, acting by and through the Department of Mines, Minerals and Energy.

eee.    "Work" means the actions described in Paragraph 63.

15

## V.  CIVIL PENALTY

15.     Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay $900,000 as a civil penalty, together with interest accruing from the Date of Lodging at the rate of interest specified in 28 U.S.C. § 1961 as of the Date of Lodging.

16.     $450,000 of the civil penalty under this Section shall be paid to the United States; $112,500 shall be paid to each State.

17.     Defendants shall make payment to the United States under this Section by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with written instructions to be provided to Defendants, after the Effective Date, by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the Western District of Virginia.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Tom D. Lusk
> Chief Operating Officer
> Southern Coal Corporation
> 216 Lake Drive
> Daniels, WV 25832
> 304-252-1074
> tomdlusk@southerncoalcorp.com

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States in accordance with Section XVI (Notices).

16

At the time of payment, Defendants shall send notice that payment has been made: (i) to

EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at:

> EPA Cincinnati Finance Office
> 26 W. Martin Luther King Drive
> Cincinnati, Ohio 45268

And (ii) to the United States via email or regular mail in accordance with Section XVI (Notices).

Such notice shall state that the payment is for the civil penalty owed pursuant to this Consent

Decree in *United States, et al. v. Southern Coal Corporation, et al.,* and shall reference the civil

action number, CDCS number, and DOJ case number 90-5-1-1-10974.

18.     Defendants shall make payment to States as follows:

    a.      Defendants shall make payment to Alabama by certified or cashier's check

made payable to "Alabama Department of Environmental Management" and mailed to Office of

General Counsel, Alabama Department of Environmental Management, P.O. Box 301463,

Montgomery, Alabama 36130-1463.

    b.      Defendants shall make payment to Kentucky under this Section by

certified or cashier's check made payable to the Kentucky State Treasurer. Payments shall

reference the civil action number, and be mailed to: Chief Hearing Officer, Office of

Administrative Hearings, 35-36 Fountain Place, Frankfort, Kentucky 40601.

    c.      Defendants shall make payment to Tennessee under this Section by

certified or cashier's check made payable to "Treasurer, State of Tennessee" and mailed to:

Tennessee Attorney General's Office, Attention Wilson S. Buntin, Environmental Division, P.O.

Box 20207, Nashville, Tennessee 37202-0207.

    d.      Defendants shall make payment to Virginia under this Section by certified

or cashier's check made payable to the "Treasurer of Virginia" and sent to the attention of the Director of the Division of Mined Land Reclamation, Department of Mines, Minerals and Energy at Post Office Drawer 900, Big Stone Gap, Virginia 24219.

19.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section X (Stipulated Penalties) in calculating their federal or state or local income tax.

20.     This Consent Decree is based, in part, on Defendants' financial condition and ability to pay. Defendants' potential liability to Plaintiffs for civil penalties for the violations resolved under this Decree could be substantially higher than agreed to in this Consent Decree. Therefore, in the event that Defendants file or become subject to a petition for relief under the Bankruptcy Code, Plaintiffs may assert, notwithstanding any other provision of the Consent Decree, a claim for the full amount of Defendants' potential liability. Defendants reserve the right to oppose the claim on any ground other than that the amount of its liability is limited by the terms of this Consent Decree. The provisions of the Bankruptcy Code and applicable non-bankruptcy law shall then govern Plaintiffs' and Defendants' rights.

## VI.  GENERAL COMPLIANCE REQUIREMENTS

21.     This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with applicable federal, state, or local laws, regulations, and permits.

22.     Defendants shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits. This Consent Decree shall not be considered as a permit issued pursuant to any federal, state, or local statute or regulation.

18

23. <u>Approval of Submissions</u>. Whenever this Decree requires Defendants to submit a plan, report, or other item ("submission") for review and approval, the following procedures apply. Defendants shall send any such submission to EPA, the States, and DOI, if required, for review and for EPA's approval. After review of any such submission, EPA, after consultation with the States and DOI, as applicable, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder, with explanation; or (d) disapprove the submission, with explanation.

24. If the submission is approved pursuant to Paragraph 23(a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 23(b) or 23(c), Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section XII (Dispute Resolution).

25. If the submission is disapproved in whole or in part pursuant to Paragraph 23(c) or 23(d), Defendants shall, within 60 Days of receipt of disapproval or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

26. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in

19

whole or in part, EPA, after consultation with the States, may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendants' right to invoke Dispute Resolution under Section XII and the right of EPA and the States to seek stipulated penalties as provided in Paragraph 27.

27.     Any stipulated penalties applicable to the original submission, as provided in Section X of this Decree (Stipulated Penalties), shall accrue during the 60-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

28.     The Parties recognize that certain plans or other submissions may be submitted to the United States and States for review and approval after the Date of Lodging but before the Effective Date. If the United States approves any such plans or submittals before the Effective Date, Defendants shall implement them pursuant to the requirements of Paragraph 8. Any plans or submittals approved by the United States during this time period are subject to enforcement under the Consent Decree on the Effective Date.

29.     Permits.  Where any compliance obligation under this Decree requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section XI of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to

20

obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

      30.    <u>Third-Party Consultants</u>

      a.    Third-party consultants selected by Defendants to perform the duties set forth in Paragraphs 34, 36 (EMS), 40 (EMS Audit), 42 (Environmental Audits), and 57 (Compliance Database Evaluations) of this Consent Decree shall have no direct financial stake in the outcome of the audit(s), inspection(s), or evaluation(s) conducted under this Decree. In addition, third-party consultants must not have provided any previous services to Defendants related to the duties set forth in Paragraphs 34, 36 (EMS), 40 (EMS Audit), 42 (Environmental Audits), and 57 (Compliance Database Evaluations) of this Consent Decree.

      b.    Defendants may use the same third-party consultant for more than one task as long as such consultant independently meets the requirements for, and is approved separately for, each task.

      c.    Defendants shall bear all costs associated with its third-party consultants, cooperate fully with them, and provide them with access to all records, employees, contractors, and Facilities that the consultants reasonably deem necessary to effectively perform the duties required of each of them by this Decree.

      31.    <u>Replacement Third-Party Consultant Qualifications</u>.  As noted in Paragraphs 34 (EMS Consultant), 39 (EMS Auditor), 42.a (Environmental Auditor), 57.a (Database Evaluator), Defendants have retained, with EPA's approval, after consultation with the States, the third-party consultants required to be hired under this Consent Decree.  If, at any time, Defendants need to

21

replace a previously hired consultant, the table below sets forth the required minimum qualifications for each type of consultant. In addition, each consultant shall be capable of performing the duties required by the applicable Paragraph(s) of this Decree:

| Paragraphs | Third Party Consultant Minimum Qualifications |
|---|---|
| 34, 36<br>EMS Consultant | • Meet the EMS auditor qualification requirements of Table 1 in ISO 19011 (first edition, 2002-10-01),<br>• Experience in developing and implementing an EMS, and<br>• Working process knowledge of the Facilities or similar operations, and the federal and state environmental requirements that apply to the Facilities. |
| 40<br>EMS Auditor | • Meet the EMS auditor qualification requirements of Table 1 in ISO 19011 (first edition, 2002-10-01), and<br>• Demonstrate expertise and competence in the regulatory programs under federal and state environmental laws. |
| 42<br>Environmental Auditor | • Demonstrate expertise and competence in the relevant regulatory programs under Applicable Environmental Laws, and<br>• Five years of experience with the requirements of NPDES and SMCRA Permits. |
| 57<br>Database Evaluator | • Expertise in management of environmental data; database design development, implementation, and support,<br>• Proficiency with Structured Query Language,<br>• Database administrator experience with tasks such as quality control requirements, backup, recovery, security, monitoring space usage, managing transactions, performance tuning, and installing upgrades, and<br>• Five years of experience working with relational databases such as SQL Server, Oracle, and Access. |

22

32. <u>Third-Party Replacement Consultant Approval Process</u>

a. For any replacement third-party consultant, Defendants shall commence the process to hire a third-party consultant by submitting to EPA and the States a list of two or more proposed consultants, along with: the name, affiliation, and address of each proposed consultant; information demonstrating how each proposed consultant satisfies the applicable Decree requirements for such consultant; and descriptions of any previous work contracts, or financial relationship with Defendants. Defendants shall commence the hiring process within any deadlines to do so for such consultant, or within sufficient time to meet any deadlines required for such consultant's work.

b. The selection of the consultant shall be subject to EPA approval, after consultation with the States, in order to ensure that any consultant to be selected by Defendants first meets the requirements of Paragraph 31. Within 20 Days after receipt of EPA's approval of one or more consultant(s), Defendants shall select one consultant from those approved by EPA and shall enter into a contract with the consultant to perform all duties required by the applicable Consent Decree Paragraphs.

c. In the event the consultant(s) approved by EPA are no longer available or willing to accept the work required when notified of their selection by Defendants, then Defendants shall, within 30 Days after receipt of EPA's approval, select another consultant approved by EPA and enter into the contract to perform all duties required by the applicable Paragraphs.

33. <u>Implementation of Consent Decree Requirements at Future Facilities</u>

a. Except as provided in subparagraph b., for any Future Facility,

23

i.          Defendants' obligations to comply with the requirements for Outlet Inspections, the Compliance Database, electronic notification of violations, and Effluent Limit and Failure to Sample Violation Response shall begin within 60 Days of the earlier of the following: a) the date of transfer of the Future Facility's permit, or b) the date that Defendants acquired rights to operate the Future Facility.

ii.         Defendants shall obtain the information set forth in Paragraph 50 for the 12-month period prior to the applicable date set forth in subparagraph i, above, in sufficient time to meet the requirements of subparagraph iii, below, if applicable.

iii.        Defendants shall conduct a Treatment System Audit within 60 Days of the applicable date set forth in subparagraph i, above, for Outlets that have had three or more Effluent Limit Violations of a particular parameter within the previous 12-month period, and within 90 Days of the applicable date set forth in subparagraph i, above, for all other Outlets.

iv.         Defendants' obligation to comply with Reporting Requirements, Environmental Audits, training requirements, and publicly available data requirements shall begin the second quarter after the applicable date set forth in subparagraph i, above.

v.          Defendants shall implement the Environmental Management System at Future Facilities within 9 months of the applicable date set forth in subparagraph i, above.

b.          In the event Defendants contemporaneously acquire multiple facilities and/or a multi-facility complex, then Defendants may request an extension or extensions of the deadlines set forth in subparagraph a, as necessary in light of the number and nature of the facility or facilities so acquired, including, without limitation, the number of permits, outfalls and

24

facilities acquired, and technical and other issues associated with the new facilities. For any such request, at least 30 days before the applicable deadline, Defendants shall submit to EPA and the applicable State for review and approval a supported request for a different deadline that is as expeditious as practicable. Defendants are not eligible for the deadline extension until it has been approved by EPA.

## VII.   INJUNCTIVE RELIEF

### Environmental Management System

34.     Defendants have retained and EPA, after consultation with the States, has approved an EMS Consultant, who assisted Defendants with the development of the EMS and the EMS Manual, and who will assist Defendants with the ongoing implementation of the EMS in accordance with the EMS Manual.

35.     On July 20, 2016, EPA, after consultation with the States, approved an EMS Manual for implementing the EMS.

36.     Defendants, assisted by the EMS Consultant, have commenced implementation of, and shall continue to implement, the EMS in accordance with the EMS Manual and the schedule contained therein. Managers responsible for environmental compliance at each Facility shall include a certification of compliance with the approved EMS Manual in Quarterly Reports submitted pursuant to Section IX, or, for any noncompliance, shall submit in the Quarterly Reports an explanation of the cause of the noncompliance, remedial steps to be taken, and a date for achieving compliance.

37.     Within 30 Days of the Date of Lodging, Defendants shall refine protocols and develop additional contractor protocols for the remaining responsibilities under the EMS Manual.

25

38.  Revisions to the EMS Manual.  Defendants must submit any revisions to the EMS Manual to EPA and the States for review.  Material revisions must be approved by EPA after consultation with the States, as provided in Paragraphs 23-26.  EPA shall notify Defendants within 30 Days of EPA's receipt of the proposed revisions whether approval of those revisions will be required.

**Audit of EMS Implementation**

39.  Defendants have retained, and EPA, after consultation with the States, has approved an EMS Auditor to conduct the Audit of the EMS Implementation.

40.  Duties of the EMS Auditor.  The EMS Auditor shall perform the following duties:

a.  By June 20, 2017, the EMS Auditor shall perform an audit of Defendants' EMS.  The EMS Audit shall evaluate the adequacy of EMS implementation consistent with the EMS Manual and identify areas of concern, from top management down, throughout each major organizational unit with responsibilities under the EMS Manual.  The EMS Audit shall be conducted in accordance with ISO 19011:2011, and shall determine the following:

i.  Whether there is a defined system, subsystem, program, or planned task for the respective EMS element;

ii.  To what extent the system, subsystem, program, or task has been implemented, and is being maintained;

iii.  The adequacy of each Facility's internal self-assessment procedures for programs and tasks comprising the EMS;

iv.  Whether Defendants are effectively communicating environmental requirements to affected parts of the organization, or those working on behalf of

26

the organization;

> v. Whether further improvements should be made to the EMS and EMS Manual; and

> vi. Whether there are deviations from Defendants' written requirements or procedures.

b. Within 30 Days of the completion of the EMS Audit, the EMS Auditor shall develop and concurrently submit an EMS Audit Report to Defendants, EPA, and the States. The EMS Audit Report shall contain: a summary of the audit process, including any obstacles encountered; detailed EMS audit findings, including the basis for each finding and each area of concern identified; identification of any such findings corrected or areas of concern addressed during the Audit; recommendations for resolving any area of concern or otherwise achieving full implementation of the EMS Manual; and certification that the EMS Audit was conducted in accordance with the provisions of this Decree.

41. <u>Follow-Up Corrective Measures</u>. Within 60 Days of Defendants' receipt of the EMS Audit Report, Defendants shall submit an EMS Audit Response and Action Plan to EPA and the States for review and approval in accordance with the procedures set forth in Paragraphs 23-26. Defendants shall submit any required revisions to the EMS Audit Response and Action Plan to EPA within 30 Days of receipt of EPA's comments. The EMS Audit Response and Action Plan shall respond to the EMS Audit findings and areas of concern identified in the EMS Audit Report and provide an action plan for expeditiously coming into full compliance with the provisions in the EMS Manual. The EMS Audit Response and Action Plan shall include the result of any Root Cause Analysis, specific actions and measures to achieve compliance,

27

responsibility assignments, and an implementation schedule for the identified actions and measures, including those that may have already been completed. Defendants shall implement the final EMS Audit Response and Action Plan in accordance with the schedules set forth therein.

**Environmental Audits, Treatment System Audits and Outlet Inspections**

42.    <u>Environmental Audits</u>.  Within 360 Days of the Date of Lodging, Defendants shall, with the assistance of a third-party Environmental Auditor, conduct Environmental Audits at all Facilities to evaluate compliance with the Applicable Environmental Laws and this Consent Decree in accordance with the procedures set forth in this Paragraph.

a.    Defendants have retained, and EPA, after consultation with the States, has approved a third-party Environmental Auditor to conduct the Environmental Audits.

b.    Within 180 days of the Date of Lodging, Defendants, with the assistance of the Environmental Auditor, shall conduct Environmental Audits at the Phase 1 Facilities listed in Appendix B (Priority Permits for Treatment System Audits).

c.    Within 360 days of the Date of Lodging, Defendants, with the assistance of the Environmental Auditor, shall conduct Environmental Audits at the Phase 2 Facilities listed in Appendix B.  The Environmental Auditor shall submit an Environmental Audit Report to Defendants detailing the results of the Phase 1 and Phase 2 audits no later than 30 Days after completion of the Phase 1 and Phase 2 audits, respectively.  For each Facility, the EA Reports shall identify any areas of non-compliance with Applicable Environmental Laws or the Consent Decree and any other areas of concern, and shall identify measures to address any non-compliance or other concerns and a schedule to come into compliance.  Defendants shall

28

implement the measures in the EA Reports in accordance with the schedule set forth therein.

43. <u>Treatment System Audits</u>.  Within 180 Days of the Date of Lodging, Defendants shall conduct audits of the treatment systems for each Outlet at all Facilities to evaluate whether the treatment systems in place are adequate to ensure and maintain environmental compliance.

a. <u>Treatment System Auditors</u>.  Defendants shall conduct TSAs using employees who do not have daily responsibilities at the Facility where the Treatment System Audit is to be conducted, but with relevant experience with the requirements of NPDES and SMCRA Permits, as well as with treatment systems for and control of relevant effluent parameters in Defendants' NPDES Permits.

b. <u>TSA Report</u>.  Within 120 Days of completion of all of the TSAs, Defendants shall submit a status report to EPA, DOI, and the States.  Such report shall include all findings from the audits, including any noncompliance, and the Treatment System Auditor's(s') recommended measures and schedule for achieving and maintaining environmental compliance.

c.  Defendants shall implement the measures in the TSA Report in accordance with the schedule set forth therein.

44. <u>Outlet Sampling and Pond Protocol and Verification</u>

a. Defendants shall configure each DMR Sample location so that sampling can be conducted at the same point for each sampling cycle and that the DMR Sample will be a representative sample of the discharge.  The DMR Sample location shall be clearly marked with a sign that includes the NPDES and SMCRA Permit numbers and the respective Outlet number. The actual physical sampling point shall be configured so that a representative sample of the discharge can be sampled.

29

b.     At the time the DMR Sample is collected, Defendants shall collect data sufficient for spatial and temporal verification of the sampling event (*e.g.*, a photograph of the Outlet signage with a time and location stamp).

c.     Defendants shall place and maintain in each pond a marker to estimate the sediment capacity of the pond.  If the marker is not visible or is missing, a secondary evaluation shall be made to determine whether the sediment capacity of the pond is sufficient.

45.     <u>Outlet Inspections</u>.  Starting with the first full month after the Date of Lodging, Defendants shall conduct Outlet Inspections (including inspections of the ponds) at the time of DMR Sampling as required by the NPDES permit(s) applicable to such sites.  Defendants shall conduct the inspections pursuant to an Outlet Inspection Checklist created by Defendants, which shall include entries for whether: (a) the Outlet is accessible; (b) the Outlet is unobstructed; (c) discharge markers are visible at the Outlet; (d) there is any water flow at the Outlet; (e) the Pond is accessible; (f) the marker that demonstrates adequate storage capacity is visible (*i.e.*, not under water or missing); (h) there are any visual indications of overtopping of the pond or other drainage system; (i) there is a buildup of sediment at the Outlet or any other location in the pond or other drainage system; (j) there is any indication of erosion or other damage to the embankment of the pond or other drainage system; (k) baffles and retention curtains are in place; (l) chemical treatment systems are appropriately stocked with chemicals and fully operational; and (m) required lock boxes are in place on chemical treatment valves.  At the time of the Outlet Inspection, Defendants shall also review the DMR Sample protocols set forth in Paragraph 44 to determine whether the DMR Sample was collected and verified appropriately, which determination Defendants shall record on the Outlet Inspection Checklist.  Defendants shall

30

complete the Outlet Inspection Checklist at the time of each Outlet Inspection and shall ensure that it is signed by the individual completing the Outlet Inspection. Defendants shall address any deficiencies identified by the inspection within 30 days.

46. Within 60 Days of the Date of Lodging, Defendants shall develop inspection protocols for all employees and contractors with responsibilities relating to Outlet Inspections under Paragraph 45.

**Violation Response**

47. Upon the Date of Lodging, Defendants shall implement a response plan for Effluent Limit and Failure to Sample Violations, which shall provide for investigation of any such violations and implementation of actions necessary to achieve compliance with the applicable NPDES Permit limits and requirements. This response plan shall, at a minimum, provide for the following response actions at all Outlets in addition to the requirements of Paragraph 45:

    a. Daily Violation Response

        i. Category 1 Daily Violation. Upon notification of the first Daily Violation at any Outlet, Defendants shall conduct daily monitoring and implement treatment measures until the Outlet returns to compliance (*i.e.*, until one compliant DMR Sample result for the respective parameter is achieved). Defendants shall also conduct a Root Cause Analysis of the violation, including Diagnostic Sampling as necessary, and implement appropriate preventive measures to address the identified cause of the violation. Any sample taken within 72 hours of notification of the first Daily Violation that results in a Daily Violation for the same pollutant parameter at the same Outlet is a Category 1 Daily Violation.

31

ii.     Category 2 Daily Violation.  Any sample taken after 72 hours of notification of the first Daily Violation that results in a consecutive Daily Violation for the same pollutant parameter at the same Outlet in the same month is a Category 2 Daily Violation.  Upon notification of the first Category 2 Daily Violation, Defendants shall consult with an individual with substantial expertise in CWA compliance and in treatment systems for and control of relevant effluent parameters in Defendants' NPDES Permits.  That individual shall evaluate Defendants' Root Cause Analysis and conduct any further analysis necessary to identify the cause of the violations, including Diagnostic Sampling as necessary, and recommend in a written report to Defendants appropriate preventive and treatment measures.  Defendants shall implement the recommended preventive and treatment measures and shall continue daily monitoring until the Outlet returns to compliance (*i.e.*, until one compliant DMR Sample for the respective parameter result is achieved).

b.     Monthly or Quarterly Violation Response

i.     Category 1 Monthly or Quarterly Violation.  Upon notification of the first Monthly or Quarterly Violation of a pollutant parameter at any Outlet ("Category 1 Monthly/Quarterly Violation"), Defendants shall conduct monitoring and treatment as appropriate until the Outlet returns to compliance (*i.e.*, until the Outlet meets the monthly average effluent limit or quarterly average effluent limit, as appropriate, for the respective parameter).  Defendants shall also conduct a Root Cause Analysis, including Diagnostic Sampling as necessary, and implement appropriate preventive measures to address the identified cause of the violation.

ii.     Category 2 Monthly or Quarterly Violation.  Upon notification of

the second Monthly or Quarterly Violation in a row of the same pollutant parameter at the same Outlet ("Category 2 Monthly/Quarterly Violation"), Defendants shall consult with an individual with substantial expertise in CWA compliance and in treatment systems for and control of relevant effluent parameters in Defendants' NPDES Permits. That individual shall evaluate Defendants' Root Cause Analysis and conduct further analysis as necessary to identify the cause of the violations, including Diagnostic Sampling as necessary, and recommend in a written report to Defendants appropriate preventative and treatment measures. Defendants shall implement the recommended preventive and treatment measures and shall continue daily monitoring until the Outlet returns to compliance (i.e. until the Outlet meets the monthly average effluent limit or quarterly average effluent limit, as appropriate, for the respective parameter).

     c.     <u>Failure to Sample Violation</u>

     i.     <u>Category 1 Failure to Sample Violation</u>. Upon notification of the first Failure to Sample Violation at any Outlet, Defendants shall take a fully compliant DMR Sample for the respective missing sampling parameter(s) and shall also conduct a Root Cause Analysis of the cause of the violation, and implement appropriate preventive measures to address the identified cause of the violation.

     ii.     <u>Category 2 Failure to Sample Violation</u>. A second Failure to Sample Violation at the same Outlet in the same month or subsequent sampling period is a Category 2 Failure to Sample Violation. Upon notification of the first Category 2 Failure to Sample Violation, Defendants shall consult with an individual with substantial expertise in CWA compliance and sampling techniques. That individual shall evaluate Defendants' Root Cause Analysis and conduct any further analysis necessary to identify the cause of the violations, and

33

recommend in a written report to Defendants appropriate preventive measures. Defendants shall implement the recommended measures at the Outlet.

   d. <u>Persistent Noncompliance</u>. If an Outlet has a violation subject to Paragraph 47(a)(i) or (b)(i) for the same pollutant parameter three or more separate times within the preceding 12-month period, then Defendants shall again comply with the response actions identified in Paragraph 47(a)(ii) or (b)(ii), as applicable, and submit to EPA and the relevant State a copy of the required written report concerning appropriate preventive and treatment measures.

   e. During a violation response sequence pursuant to this Paragraph, if an Outlet does not discharge due to no flow conditions on four consecutive Days, daily monitoring and treatment pursuant to this Paragraph may be suspended. Any treatment system modification, Root Cause Analysis, or expert consultation in progress must continue as scheduled. If an Effluent Limit Violation for that respective parameter or a Failure to Sample Violation occurs during the next sampling event at that Outlet, the violation response sequence resumes as if there were no suspension of daily monitoring and sampling.

<strong>Compliance Database</strong>

48. Defendants have developed, and have commenced, and shall continue, implementing and maintaining an electronic Compliance Database to track sampling and compliance data as detailed in Paragraphs 49-54.

49. Within 30 Days of the Date of Lodging, Defendants shall require laboratories to provide electronic transmittal of all DMR Sample results to the Database, within 48 hours of completion of analysis. Upon receipt of DMR Sample results, Defendants shall provide

34

immediate electronic notification of any Effluent Limit Violation to Defendants' managers responsible for environmental compliance at the relevant Facility(ies). For each such violation, the electronic notification shall identify the Outlet, the relevant DMR Sample result(s), and the date when the violation occurred. Defendants shall also submit DMR Sample results electronically to the relevant regulatory authority if that regulatory authority has the capability to receive DMRs electronically.

50. The Database shall include the following additional information for each Effluent Limit Violation at each Outlet for the 12-month period immediately preceding the Date of Lodging:

       a. Identification of Outlet by NPDES and SMCRA Permit numbers, permittee, and latitude and longitude;

       b. Dates of DMR Samples and DMR Sample results (including units);

       c. NPDES effluent limit that was exceeded;

       d. Percentage by which the limit was exceeded;

       e. Number of consecutive violations for the same pollutant parameter;

       f. Number of violations for that particular pollutant parameter over the preceding 12 months; and

       g. Total number of all violations at that particular Outlet over the preceding 12 months.

51. The Database shall also include the following information for each Failure to Sample Violation at each Outlet for the 12-month period immediately preceding the Date of Lodging:

35

    a.  Identification of Outlet by NPDES and SMCRA Permit numbers, permittee, and latitude and longitude;

    b.  Date the required samples were not taken; and

    c.  Total number of all violations at that particular Outlet over the preceding 12 months.

  52.  Within two business days of receipt of DMR Sample results pursuant to Paragraph 49, Defendants shall update the Database with new Effluent Limit violations and/or Failure to Sample violations to include:

    a.  Information identified in Paragraphs 50-51;

    b.  Cause of the violation, the planned response, and any required actions under Paragraph 47 (Violation Response), as known at the time and updated as more information becomes available;

    c.  Associated Diagnostic Sampling Results, as known at the time and updated as more information becomes available;

    d.  Date that noncompliance ended, if known at the time and updated as more information becomes available; and

    e.  Any applicable stipulated penalties.

  53.  In addition, Defendants shall update and maintain the Database to include the following information pertaining to the Environmental Audits (EA) and Treatment System Audits (TSA) conducted at each Facility pursuant to Paragraphs 42-43:

    a.  The date and a description of all EAs and TSAs conducted at each Facility in accordance with this Decree;

36

b.      The date the applicable reports were finalized, results of the EAs and TSAs, recommended measures, and the dates by which the recommended measures are required to be completed; and

c.      The date that recommended measures were completed at each Facility.

54.      The Database shall also include entries for NOVs, COs, unauthorized discharges, and any additional violations of Applicable Environmental Laws or this Consent Decree that occur subsequent to the Date of Lodging, including for each:

a.      Identification by NPDES and SMCRA Permit number and permittee;

b.      Date and description of violation;

c.      Cause of violation and planned response, taking into account any applicable information identified in an EA or TSA required by this CD;

d.      Date that noncompliance ended (if applicable); and

e.      Any State-issued order and/or penalties associated with the violation.

55.      Within 15 Days of the Date of Lodging, Defendants shall develop protocols for all contractors with responsibilities relating to electronic transmittal of sample results and notification under Paragraph 49.

56.      Defendants shall provide access to the Database to EPA, DOI, and the States upon request.  In addition, within 10 business days of a request from EPA, DOI, or a State for information from the Database, Defendants shall produce such information to the requestor.

57.      <u>Compliance Database Evaluation</u>.  Within 30 Days of the Effective Date, Defendants shall, with the assistance of a Database Evaluator, conduct an information technology evaluation of the Compliance Database to assess whether the Database is capable of collecting,

37

maintaining, and disseminating the information required by this Consent Decree and has performed such functions accurately and completely.

        a.       Defendants have retained and EPA, after consultation with the States, has approved a Database Evaluator to conduct the Database Evaluation.

        b.       Within 30 Days of completing the Database Evaluation, the Database Evaluator shall submit to Defendants, EPA, DOI, and the States a report of findings, including:

            i.       Any structural deficiencies in the database system;

            ii.       Any functional deficiencies in the capability of the Database to track all violations of Applicable Environmental Laws and other information as required by this Consent Decree; and

            iii.       Any recommended measures to address any such deficiencies.

        c.       Within 30 Days of the Database Evaluator's report, Defendants shall implement any measures recommended by the Database Evaluator and shall correct any deficiencies.

## Publicly Available Data

58.      Within 60 Days of the Date of Lodging, Defendants shall establish and maintain a publicly available website or portal that will, at a minimum, provide real time access by members of the public to the following information:

        a.       NPDES Permits;

        b.       DMRs submitted to a regulating entity under the CWA;

        c.       Water sampling and monitoring data obtained under Applicable

Environmental Laws;

d.      Effluent Limit Violation and Failure to Sample Violation information; and

e.      State or federal CWA or SMCRA enforcement notifications, such as NOVs, COs, or other orders received.

Of the information set forth above, only information claimed and subsequently determined to be confidential business information ("CBI") under EPA regulations or applicable State laws may be excluded from this website.

59.     The publicly available data must be readily searchable by conventional internet and website means and must be available and downloadable free of charge.

**Training**

60.     Beginning no later than 180 days after the Effective Date, Defendants shall provide and require annual formal training for all employees whose job responsibilities include environmental monitoring or compliance, including, but not limited to: (a) CWA compliance; (b) compliance with environmental provisions of SMCRA, including sediment control technologies; (c) mine wastewater treatment technologies and practices; (d) site-specific training as necessary to fulfill environmental responsibilities; (e) requirements in the EMS Manual; and (f) obligations in this Consent Decree.

61.     Defendants shall provide formal training for all contractors and laboratory personnel that they have hired or will hire to perform duties required by or related to this Consent Decree and/or the EMS Manual.  The training shall cover any applicable requirements under this Consent Decree and/or any applicable requirements in the EMS Manual.  The training shall be conducted no later than 180 Days after the Effective Date.  For contractors hired after the initial

training, training shall be conducted no later than 30 Days after the date of execution of the contract, and in any event, in advance of implementation of the contractor's duties. After the initial training by Defendants, Defendants shall require contractors to provide equivalent semi-annual formal training for contractors' employees who perform duties required by or related to this Consent Decree and/or the EMS Manual.

62. All training under Paragraphs 60 and 61 shall be documented with the date of training, signatures of attendees, a summary of training topics, and copies of training materials. Defendants shall include this documentation in Quarterly Reports (required by Paragraph 75) following the training session(s).

## VIII.      FINANCIAL ASSURANCE

### Letter of Credit and Standby Trust Agreement

63. For purposes of this Section, the Work is defined as Sections VI (General Compliance Requirements), VII (Injunctive Relief), and IX (Reporting and Certification Requirements) of this Consent Decree, and taking all necessary additional actions to comply with the Defendants' NPDES permits for the term of the Consent Decree.

64. Within 30 days of the Effective Date, Defendants shall provide to the United States a fully executed Irrevocable Letter of Credit, consistent with the form in Appendix C, in the amount of $4,500,000 to guarantee funding of a Standby Trust required under Paragraph 65 of the Consent Decree.

65. Within 30 days of the Effective Date, Defendants shall provide to the United States a fully executed Standby Trust, consistent with the form in Appendix D, to guarantee funding of and the Work as required under this Section of the Consent Decree.

40

66.     Environmental Fund, LLC shall guarantee and shall be bound as a signatory of this Consent Decree: (1) as the Applicant, to provide to the United States a fully executed Letter of Credit, as required by Paragraph 64; and (2) as the Grantor, to provide to the United States a fully executed Standby Trust, as required by Paragraph 65.

### Default on Work Obligations

67.     In the event EPA determines that Defendants are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner that may cause an endangerment to human health or the environment ("Default"), EPA may issue a written notice ("Default Notice") to Defendants.  In any such Default Notice, EPA will specify the grounds upon which such Default Notice was issued, the aspects of the Work that must be performed, and the period of time (not less than 10 days) within which Defendants must perform the prescribed Work.  EPA, after consultations with the States, may extend this time period.

68.     If, after expiration of the 10-day or other specified period as provided in Paragraph 67, Defendants have not performed the specified Work to EPA's satisfaction, EPA may at any time thereafter present a Sight Draft under the Letter of Credit (which may be in the form provided in Exhibit 1 to the LOC) to Carter Bank and Trust, which shall pay the amount immediately to the Standby Trust, thereby initiating the Trustee's trust responsibility to hire and fund contractors to satisfactorily perform the specified Work.

69.     Defendants may invoke the procedures set forth in Section XII (Dispute Resolution), to dispute the Default Notice.  However, the Trustee shall honor its trust responsibilities during the pendency of any Dispute Resolution.

70.     In the event that the Trustee's responsibilities have been initiated, as described in

41

Paragraph 68, the Grantor shall provide directions to the Trustee, with a copy to EPA, as necessary to insure that the Trustee takes all necessary actions to perform the Work specified by the Default Notice in accordance with the Default Notice, the Standby Trust, and the applicable requirements of this Consent Decree.

### Trustee

71.     As provided in Appendix D, in fulfilling its obligation as Trustee of the Trust, the Trustee is entitled to immunity from suit when acting within the scope of this Consent Decree, except for a breach of its fiduciary duty as a Trustee.

72.     The Trustee is not a fiduciary with respect to any entity other than the Grantor.

73.     In the event of the Defendants' Default and the initiation of the Trustee's responsibilities pursuant to Paragraph 68, the Trustee, through contractors, as necessary, shall perform the Work specified in the Default Notice issued pursuant to Paragraph 67 in accordance with: the applicable requirements of this Consent Decree and the Trust; directions from the Grantor; and any directions from, or requests by, EPA.

74.     The Trustee's obligations to perform the specified Work is limited by the amount of funding provided to the Trust from the LOC for each year for the duration of the Consent Decree.

### IX.      REPORTING AND CERTIFICATION REQUIREMENTS

### Quarterly Reports

75.     The manager responsible for environmental compliance at each Facility shall submit quarterly reports to Defendants' appropriate management on issues related to compliance with the CWA and SMCRA as it relates to the operation, monitoring, and/or maintenance of

42

discharges, drainage and sediment control systems or otherwise relates to water quality (as used in this Section, "CWA/SMCRA"), and this Consent Decree. Defendants shall submit a consolidated Quarterly Report for all Facilities to EPA, DOI, and the States. The Quarterly Reports may be submitted in electronic form and shall be due at the end of the month following the end of each quarter (*i.e*., by January 31, April 30, July 31, and October 31), and shall contain, at a minimum, the following information for each Facility:

   a. <u>CWA/SMCRA Violations</u>. (i) A summary of CWA/SMCRA violations at the Facility, including total number of Effluent Limit and/or Failure to Sample Violations, total number of Outlets with consecutive Effluent Limit Violations of the same parameter, total number of Outlets that have had three or more Effluent Limit Violations of a particular parameter within any 12 month period, and total amount of stipulated penalties accrued during that quarter; (ii) a summary of NOVs, COs, unauthorized discharges, and any additional CWA/SMCRA violations; (iii) a summary of steps taken or planned steps to remedy the violations identified in (i) and (ii); (iv) a copy of any report(s) generated pursuant to Paragraph 47.a.ii, b.ii, and c.ii during the previous quarter (except those that have already been submitted to EPA pursuant to Paragraph 47.d (Persistent Noncompliance)), and documentation of actions taken in response to the report(s); and (v) a copy of the Database entries with the information identified in Paragraph 42 (Environmental Audits) for all Applicable Environmental Law and Consent Decree violations occurring during the relevant quarter;

   b. A summary of any instances in which an Environmental Audit response or Treatment System Audit response was not completed by the deadline required by the applicable EA Audit Report (Paragraph 42.b or .c) or by the TSA Report (Paragraph 43.b), as applicable;

43

c.     A certification of compliance with the approved EMS Manual, or, for any noncompliance, an explanation of the cause of the noncompliance and remedial steps taken or to be taken and a date for achieving compliance;

d.     Documentation of training sessions as required under Paragraph 62;

e.     The status of Consent Decree implementation, including the status of any construction or compliance measures, and problems encountered or anticipated, together with implemented or proposed solutions;

f.     A description of any other noncompliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation;

g.     A description of each Consent Decree violation for which Defendants have submitted to EPA an unresolved Force Majeure claim or intend to submit a Force Majeure claim pursuant to Section XI of this Consent Decree; and

h.     An updated "tracker" as required by Paragraph 76.

### Other Reporting Requirements

76.     <u>Tracking of Obligations</u>.  Within thirty (30) days of the Effective Date, Defendants shall submit to EPA, DOI, and the States in an electronic format acceptable to EPA and the States, a Gantt Chart, Pert Chart, critical path diagram, or similar scheduling tool ("tracker"), that sets forth the completion and/or due date(s) for any obligation, report or other item required to be completed or submitted pursuant to this Consent Decree.  Defendants shall update the tracker and submit the revised tracker with each quarterly report required pursuant to Paragraph 75.

44

77.     Whenever any violation of this Consent Decree or of any applicable NPDES or SMCRA Permit or any other event affecting Defendants' performance under this Decree, or the performance of its Facilities, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and the States by telephone or email as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event. This procedure is in addition to the reporting requirements set forth in the preceding Paragraphs.

78.     All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices).

79.     Each report submitted by Defendants under this Section shall be signed by an official of Defendants and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

80.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

81.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligation required by: the CWA or SMCRA or implementing regulations; equivalent state laws or regulations; or any other federal, state, or local law, regulation, permit, or other requirement.

82.     Any information provided pursuant to this Consent Decree may be used by the

45

United States and the States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

83. <u>Financial Information Certification</u>. Defendants hereby certify, to the best of their knowledge and belief, after thorough inquiry, (a) that they have submitted to the United States financial information that fairly, accurately, and materially sets forth their financial circumstances as of December 2015; and (b) that those circumstances have not materially improved between December 2015 and the date of Defendants' signature of this Consent Decree; and (c) that it does not have any insurance policies that may cover any of the requirements of this Consent Decree.

## X. <u>STIPULATED PENALTIES</u>

84. Defendants shall be liable for stipulated penalties to the United States and the States for violations as specified below, unless excused under Section XI (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree or made effective pursuant to Paragraph 28, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

85. <u>Non-Compliance with Consent Decree</u>. The following stipulated penalties shall accrue per violation per Day for each violation of any requirement of this Consent Decree, except as provided in Paragraphs 86-89:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1000 per Day or portion thereof | 1st through 14th Day |
| $2500 per Day or portion thereof | 15th through 30th Day |
| $4500 per Day or portion thereof | 31st Day and beyond |

46

86. <u>Non-Compliance with Reporting Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation of the Reporting Requirements under Section IX of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 per Day or portion thereof | 1st through 14th Day |
| $500 per Day or portion thereof | 15th through 30th Day |
| $1250 per Day or portion thereof | 31st Day and beyond |

87. <u>Non-Compliance with Outlet Inspection Requirements.</u> The following stipulated penalties shall accrue per violation per Day for each violation of Paragraph 44 or 45:

Failure to collect data as required by Paragraph 44.b: $500 per violation
Failure to perform outlet inspections required by Paragraph 45: $1000 per violation per day
Failure to document the inspection as required by Paragraph 45: $500 per violation
Failure to address deficiencies within 30 days: $1000 per violation per day

88. <u>Effluent Limit and Failure to Sample Violations</u>

a. Except as provided in Paragraph 88.b, the following stipulated penalties shall accrue for each Effluent Limit Violation or Failure to Sample Violation, as applicable, at any of Defendants' Facilities after the Date of Lodging of this Consent Decree:

| Per Daily Violation | Category of Noncompliance |
|---|---|
| $2,500 | Category 1 Daily Violation |
| $3,500 | Category 2 Daily Violation |

| Per Monthly or Quarterly Violation | Category of Noncompliance |
|---|---|
| $3,000 | Category 1 Monthly/Quarterly Violation |
| $4,500 | Category 2 Monthly/Quarterly Violation |

| Per Failure to Sample Violation | Category of Noncompliance |
|---|---|
| $2,000 | Category 1 Failure to Sample Violation |
| $3,000 | Category 2 Failure to Sample Violation |

47

b.     As shown in Appendix E (NPDES Permits that Share an Outlet), certain Outlets are shared between two or more permits.  Only for purposes of stipulated penalties pursuant to this subparagraph and Paragraph 89, for the Outlets listed in Appendix E, an Effluent Limit Violation or Failure to Sample Violation from one of these shared Outfalls shall count as one such violation even if it results in more than one permit violation due to the fact that two or more permits share the same sampling point.

89.     <u>Outlets with Persistent Noncompliance Issues</u>.  The following stipulated penalties shall accrue for each Effluent Limit Violation at any Outlet with three or more violations of the same parameter in the preceding twelve month period.  These stipulated penalties shall be in addition to those accruing under Paragraphs 87:

> Additional Penalty Per Daily Violation: $1,000
> Additional Penalty Per Monthly or Quarterly Violation: $2,000

90.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

91.     Defendants shall pay any stipulated penalties due under Paragraphs 87-89 at the end of the month following the end of each calendar quarter in which any violations occur (*i.e.*, by January 31, April 30, July 31, and October 31) and in the percentages set forth in Paragraph 94.

92.     Defendants shall pay any stipulated penalty due pursuant to Paragraphs 85-86 within 30 Days of receiving a written demand and in the percentages set forth in Paragraph 93.

48

In any case, the Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiffs.

93. Defendants shall pay fifty percent of any stipulated penalty pursuant to Paragraphs 85-86 to the United States, and 12.5% to each of Alabama, Kentucky, Tennessee, and Virginia.

94. Defendants shall pay fifty percent of stipulated penalties due pursuant to Paragraphs 87-89 to the United States, and 50% to the State in which the Effluent Limit, Failure to Sample, or Outlet Inspection violation occurred, or 100% to the United States if the violation occurred in West Virginia.

95. The United States or a State may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

96. Stipulated penalties shall continue to accrue as provided in Paragraph 90 during any Dispute Resolution under Section XII, but need not be paid until the following:

    a. If the dispute is resolved by agreement of the Parties or by a decision of EPA or the applicable State that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and the States within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

    b. If the dispute is appealed to the Court and the United States or the applicable State prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, to the United States and the States within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

49

c.       If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

97.     Obligations Prior to the Effective Date.  Upon the Effective Date, the stipulated penalty provisions of this Decree are retroactively enforceable with regard to any and all violations of Paragraphs 36-37 and 40-41 (EMS and EMS Audit) and 48-55 (Compliance Database) that have occurred after the Date of Lodging and prior to the Effective Date, provided that stipulated penalties that may have accrued after the Date of Lodging and prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

98.     Defendants shall pay stipulated penalties owed to the United States pursuant to this Section in the manner set forth in Paragraph 17 and with the confirmation notices and transmittal letter information required by Paragraph 17, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

99.     Defendants shall pay stipulated penalties owed to the States as follows:

Alabama: by cashier's check or certified check made payable to "Alabama Department of Environmental Management" and mailed to Office of General Counsel, Alabama Department of Environmental Management, P.O. Box 301463, Montgomery, Alabama 36130-1463.

Kentucky: by cashier's check, certified check, or money order, made payable to Kentucky State Treasurer and sent to the attention of Accounts Payable, Office of Administrative Hearings, Energy and Environment Cabinet, 211 Sower Blvd., Frankfort, Kentucky 40601.

Tennessee: by cashier's check or certified check made payable to "Treasurer, State of Tennessee" and mailed to Wilson S. Buntin, Tennessee Attorney General's Office, Environmental Division, P.O. Box 20207, Nashville, Tennessee 37202-0207.

50

Virginia: by certified check or cashier's check made payable to "Treasurer of Virginia" and mailed to Hearings and Legal Services Officer, Department of Mines, Minerals and Energy, Division of Mined Land Reclamation, P.O. Drawer 900, Big Stone Gap, Virginia 24219.

100. If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

101. The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

102. <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' or the States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the United States and the States each expressly reserve the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XI. **FORCE MAJEURE**

103. "Force Majeure," for purposes of this Consent Decree, is defined as any event

51

arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

104. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice by telephone or email to EPA and the States within 3 business days of when Defendants first knew that the event might cause a delay. Within 7 Days thereafter, Defendants shall provide in writing to the United States and the States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to

52

comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

105. If EPA, after a reasonable opportunity for review and comment by the States and DOI, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the States, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

106. If EPA, after a reasonable opportunity for review and comment by the States and DOI, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendants in writing of its decision.

107. If Defendants elect to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), they shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 103 and 104, above. If

53

Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII. DISPUTE RESOLUTION

108.    Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or the States to enforce any obligation of Defendants arising under this Decree.

109.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States and the State(s) (as applicable) a written Notice of Dispute.  The Notice of Dispute shall clearly state the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State(s) (as applicable), shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

110.    Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State(s) (as applicable) a written Statement of Position regarding the matter in

54

dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

111. The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States, and shall be developed after consultation with the States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 112.

112. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and the State(s), in accordance with Section XVI (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to Paragraph 111. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

113. The United States and/or the State(s) shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

114. <u>Standard of Review</u>

a.  <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 112 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.  <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 112, Defendants shall bear the burden of proving that its actions were in compliance with this Consent Decree; or, if the dispute concerns the interpretation of this Consent Decree, Defendants shall bear the burden of demonstrating that their interpretation is consistent with the language of the Consent Decree and better furthers its objectives than the position advanced by the United States.

115.  The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 96.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.  INFORMATION COLLECTION AND RETENTION

116.    The United States, the States, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry onto any Facility, at all reasonable times, upon presentation of identification or credentials, to:

        a.    Monitor the progress of activities required under this Consent Decree;

        b.    Verify any data or information submitted to the United States or the States in accordance with the terms of this Consent Decree;

        c.    Obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants;

        d.    Obtain documentary evidence, including photographs and similar data; and

        e.    Assess Defendants' compliance with this Consent Decree.

117.    Upon request, Defendants shall provide EPA and the States, or their authorized representatives, splits of any samples taken by Defendants.  Upon request, EPA and the States shall provide Defendants splits of any samples taken by EPA or the States.

118.    Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United

57

States or the States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

119.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States and the States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the States, Defendants shall deliver any such documents, records, or other information to EPA or the States.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

120.     Defendants may also assert that information required to be provided under this Section is protected as CBI by following the procedures set forth in 40 C.F.R. Part 2; Ala. Code § 22-22-9(c); or KRS § 224.10-210; Tenn. Code Ann. § 10-7-504(a)(5)(A) (including sending such material only to the Tennessee Attorney General's Office),  as applicable.  The United States and the States will treat such materials in accordance with the applicable federal or state CBI regulations.

121.     This Consent Decree in no way limits or affects any right of entry and inspection,

58

or any right to obtain information, held by the United States or the States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

122. This Consent Decree resolves the civil claims of the United States and the States alleged in the Complaint for the violations set forth in Appendix F to this Consent Decree; provided, however, that this Decree does not resolve or affect Defendants' obligations to comply with any existing State administrative orders.

123. The United States, DOI, and the States reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree does not limit the rights of the United States, DOI, or the States to obtain penalties or injunctive relief under the CWA, SMCRA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 122. The United States, DOI, and the States further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

124. Notwithstanding any other provision of this Consent Decree, the resolution of liability provided by Paragraph 122 is conditioned on the veracity and completeness of the Financial Information provided by Defendants to the United States. The United States reserves, and this Consent Decree is without prejudice to, the right to reinstate or reopen this action, or to

59

commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by the Defendants, or the financial certification made by the Defendants in Paragraph 83, is in any material respect false or inaccurate.

125. If the Financial Information or financial certification is subsequently determined by EPA to be, in any material respect, false or inaccurate, Defendants shall forfeit all payments made pursuant to this Consent Decree, and the resolution of liability provided by Paragraph 122 shall be null and void. Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' or the States' right to pursue any other causes of action arising from Defendants' materially false or inaccurate information.

126. In any subsequent administrative or judicial proceeding initiated by the United States, DOI, or the State(s) for injunctive relief, civil penalties, and/or other appropriate relief relating to the Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States, DOI, or the States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 122.

127. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

60

The United States, DOI, and the States do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree shall result in compliance with provisions of the CWA, 33 U.S.C. § 1311, *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

128.     This Consent Decree does not limit or affect the rights of Defendants or of the United States, DOI, or the States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

129.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.  COSTS

130.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XVI.  NOTICES

131.     Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

61

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ No. 90-5-1-1-08470/1

Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building, 2241A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

NPDES Enforcement Branch Chief
U.S. EPA Region III
1650 Arch Street, 3WP42
Philadelphia, PA 19103

NPDES Permitting and Enforcement Branch Chief
U.S. EPA Region IV
61 Forsyth Street, S.W.
Atlanta, GA 30303

To EPA:

Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building, 2241A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

NPDES Enforcement Branch Chief
U.S. EPA Region III
1650 Arch Street, 3WP42
Philadelphia, PA 19103

NPDES Permitting and Enforcement Branch Chief
U.S. EPA Region IV
61 Forsyth Street, S.W.
Atlanta, GA 30303

*To EPA for purposes of email or telephone notice required by Paragraphs 77 and 104:*
Melissa Raack, raack.melissa@epa.gov, 202-564-7039

To DOI:

Applicant/Violator System Office
Office of Surface Mining Reclamation and Enforcement
2679 Regency Rd.
Lexington, KY  40503
Attn: Stephanie Varvell

Regional Director, Appalachian Region
Office of Surface Mining Reclamation and Enforcement
3 Parkway Center
Pittsburgh, PA 15220

To Alabama:

*For legal and technical submittals:*
Office of Attorney General
501 Washington Avenue,
Montgomery, Alabama 36130-0152
*and*
Office of General Counsel
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, Alabama 36130-1463

*For technical submittals only:*
Alabama Department of Environmental Management
Attn: Chief of the Stormwater Management Branch, Water Division
P. O. Box 301463
Montgomery, Alabama 36130

<u>To Kentucky</u>:

John G. Horne, II
Executive Director/General Counsel
Office of General Counsel
Kentucky Energy and Environment Cabinet
Office of General Counsel
300 Sower Blvd – 3rd Floor
Frankfort, Kentucky 40601

<u>To Tennessee</u>:

*For technical submittals only:*
Tennessee Department of Environment and Conservation
Mining Section
Attention: Dave Turner
3711 Middlebrook Pike
Knoxville, TN 37921

*For legal submittals:*
Tennessee Attorney General's Office
Environmental Division
Attention: Wilson S. Buntin
P.O. Box 20207
Nashville, TN 37202

<u>To Virginia</u>:

*For legal submittals:*
Office of the Virginia Attorney General
Attn: Environmental, Counsel for DMME
Ninth Street Office Building
202 N. Ninth Street
Richmond, Virginia 23219

*For all other submittals:*
Department of Mines, Minerals and Energy
Attn: Division of Mined Land Reclamation,
P.O. Drawer 900, Big Stone Gap, Virginia 24219

To Defendants:

James C. Justice, III, Executive Vice-President
Southern Coal Corporation
302 South Jefferson Street
Roanoke, VA. 24011

Tom D. Lusk
Chief Operating Officer
Southern Coal Corporation
216 Lake Drive
Daniels, WV 25832
304-252-1074
tomdlusk@southerncoalcorp.com

Stephen W. Ball
Southern Coal Corporation
302 S. Jefferson Street
Roanoke, Virginia 24011
540-776-7890
steve.ball@bluestoneindustries.com

As Necessary, to the Trustee:

Wesley H. White Esq.
Trust Legal Counsel
United Wealth Management Group
United Bank, Inc.
514 Market Street
Parkersburg, WV 26101
304-357-5189 (Direct)
wesley.white@bankwithunited.com

As Necessary, to the Grantor, Environmental Fund, LLC:

Steven W. Ball
Treasurer
Wintergreen Hospitality Partners, LLC
(the sole member of Environmental Fund, LLC)
Environmental Fund, LLC
302 S. Jefferson Street
Roanoke, Virginia 24011
540-776-7890

65

steve.ball@bluestoneindustries.com

<u>As Necessary, to the Issuing Bank for the LOC</u>:
Phyllis Q. Karavatakis
President
Carter Bank & Trust
1300 Kings Mountain Road
Martinsville, Virginia 24112
276-656-1776
Phyllis.Karavatakis@carterbankandtrust.com

132.    Any Party, the Grantor, the Trustee, or the issuing bank for the LOC, as necessary,

may, by written notice to the other Parties, the Grantor, the Trustee, and the issuing bank for the

LOC, change its designated notice recipient or notice address provided above.

133.    Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XVII.   <u>RETENTION OF JURISDICTION</u>

134.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XII (Dispute Resolution) or XVIII (Modification) or

effectuating or enforcing compliance with the terms of this Decree.

## XVIII.   <u>MODIFICATION</u>

135.    The terms of this Consent Decree, including any attached appendices, may be

modified only by a subsequent written agreement signed by all the Parties.  Where the

modification constitutes a material change to this Decree, it shall be effective only upon approval

by the Court.

66

136.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII of this Decree (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 114, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.  TERMINATION

137.     After Defendants have completed the requirements of Paragraphs 40-41 (Environmental Management System and EMS Audit), Paragraph 42 (Environmental Audits), Paragraph 43 (Treatment System Audits), Paragraphs 48-54 and 57 (Compliance Database and Database Evaluation), and Paragraph 58-59 (Publicly Available Information); have thereafter maintained consistent satisfactory compliance with this Consent Decree for an additional period of three years; have complied with all other requirements of this Consent Decree; and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States and the States a Request for Termination, stating that the Defendants have satisfied those requirements, together with all necessary supporting documentation.

138.     Following receipt by the United States and the States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States, after consultation with the States, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

67

139.     If the United States, after consultation with the States, does not agree that the Decree may be terminated, the Defendants may invoke Dispute Resolution under Section XII. However, the Defendants shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

## XX.  PUBLIC PARTICIPATION

140.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI.  SIGNATORIES/SERVICE

141.     Each undersigned representative of the Defendants and the States, and, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

142.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service

68

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The Parties agree that Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.  INTEGRATION

143.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than submissions that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIII.  FINAL JUDGMENT

144.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree constitutes a final judgment of the Court as to the United States, the States, and Defendants.

## XXIV.  APPENDICES

145.    The following appendices are attached to and part of this Consent Decree:

Appendix A:  Financial Information Submitted to the United States from Southern Coal and Affiliated Companies

Appendix B: Priority Permits for Environmental Audits

Appendix C: Irrevocable Letter of Credit

69

Appendix D: Standby Trust Agreement

Appendix E: NPDES Permits that Share an Outlet

Appendix F: Violations Resolved by this Consent Decree

SO ORDERED THIS 19th DAY OF DECEMBER, 2016.

_____
United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.*

FOR THE UNITED STATES OF AMERICA

Date: _____

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: 9/29/16

LORI JONAS (CA Bar No. 158268)
Senior Attorney
Tel: (202) 514-4080
Email: lori.jonas@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

LESLIE ALLEN (Wash. DC Bar No. 421354)
Senior Attorney
Tel: (202) 514-4114
Email: leslie.allen@usdoj.gov

PATRICK CASEY (FL Bar No. 731048)
Senior Counsel
Tel: (202) 514-1448
Email: patrick.casey@usdoj.gov

LEIGH P. RENDÉ (PA Bar No. 203452)
Trial Attorney
Tel: (202) 514-1461
Email: leigh.rende@usdoj.gov

71

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al,*

FOR THE UNITED STATES OF AMERICA

JOHN P. FISHWICK JR.
United States Attorney
Western District of Virginia

Date: 9/26/16

ANTHONY GIORNO (VSB No. 15830)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
310 1st Street, SW
Room 906
Roanoke, VA 24011
Tel: 540-857-2906
Email: anthony.giorno@usdoj.gov

72

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.,*

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY (REGION 3)

Date: _9|16|2016_

Cecil Rodrigues for SMG
SHAWN M. GARVIN
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

Date: _9/14/16_

MARY B. COE
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

Date: _9/13/16_

DOUGLAS FRANKENTHALER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

73

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v Southern Coal Corp. et al.*,

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY (REGION IV)

Date: 9/14/16

MARY J. WILKES
Regional Counsel
U.S. Environmental Protection Agency, Region IV
61 Forsyth Street, S.W.
Atlanta, GA 30303

74

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.,*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (OECA)

Date: _9/13/16_

SUSAN SHINKMAN
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
William J. Clinton Building, South
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _9/7/16_

MARK POLLINS
Director, Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
William J. Clinton Building South
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _9/7/16_

MELISSA RAACK
Attorney-Advisor, Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
William J. Clinton Building South,
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United·States, et al. v. Southern Coal Corp. et al.,*

FOR THE STATE OF ALABAMA

Date: 9-13-16

ROBERT D. TAMBLING (AL Bar No. ASB-6026-N67R)
Assistant Attorney General
State of Alabama
501 Washington Avenue
Montgomery, Alabama 36130-0152
Tel: (334) 242-7445
Email: rtambling@ago.state.al.us

FOR ALABAMA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT

Date: 9.13.16

SCHUYLER K. ESPY (AL Bar No. ASB-7686-B37K)
Associate General Counsel
Alabama Department of Environmental
Management
P.O. Box 301463
Montgomery, Alabama 36130-1463
Tel: (334) 271-7855
Email: SEspy@adem.state.al.us

76

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.,*

FOR THE COMMONWEALTH OF KENTUCKY

Date: _Sept. 13, 2016_

R. BRUCE SCOTT
Deputy Secretary
Energy and Environment Cabinet
300 Sower Blvd., 3rd floor
Frankfort, KY 40601

Date: _9-13-2016_

JOHN G. HORNE, II (KY Bar No. 83826)
Executive Director/General Counsel
Office of General Counsel
Kentucky Energy and Environment Cabinet
Office of General Counsel
300 Sower Blvd – 3rd Floor
Frankfort, Kentucky 40601
Tel: (502) 782-6978
Email: John.horne@ky.gov

77

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.,*

FOR THE STATE OF TENNESSEE

HERBERT H. SLATERY III
Attorney General and Reporter
State of Tennessee

Date: 9-20-16

WILSON S. BUNTIN (TN Bar No.: 023231)
Senior Counsel
Tennessee Attorney General's Office
Environmental Division
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-5118
Email: Wilson.buntin@ag.tn.gov

78

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.,*

FOR THE COMMONWEALTH OF VIRGINIA

Date: 9 / 26 / 2016

PAUL KUGELMAN, JR. (VSB No. 41624)
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-2071 - Main
(804) 786-3811 - Direct Dial
Email: pkugelman@oag.state.va.us

79

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Southern Coal Corp. et al.,*

FOR THE DEFENDANTS

SOUTHERN COAL CORPORATION; JUSTICE COAL OF ALABAMA, LLC; A & G COAL CORPORATION; FOUR STAR RESOURCES LLC; INFINITY ENERGY, INC.; KENTUCKY FUEL CORPORATION; SEQUOIA ENERGY, LLC; VIRGINIA FUEL CORPORATION; NATIONAL COAL, LLC; PREMIUM COAL COMPANY, INCORPORATED; S AND H MINING INC.; AIRWAY RESOURCES, L.L.C.; BADEN RECLAMATION COMPANY; BLACK RIVER COAL, LLC; CHESTNUT LAND HOLDINGS, LLC; MEG-LYNN LAND COMPANY, INC.; NINE MILE MINING, INC.; CANE PATCH MINING CO., INC.; BLUESTONE RESOURCES INC.; DYNAMIC ENERGY, INC.; GREENTHORN, LLC; JUSTICE HIGHWALL MINING, INC.; NATIONAL RESOURCES, INC.; NUFAC MINING COMPANY, INC.; PAY CAR MINING, INC.; SECOND STERLING CORP.; AND NEWGATE DEVELOPMENT OF BECKLEY LLC

Date: Aug. 31, 2016

TOM D. LUSK
Chief Operating Officer
Southern Coal Corporation
216 Lake Drive
Daniels, WV 25832
304-252-1074
tomdlusk@southerncoalcorp.com

80

COUNSEL TO SOUTHERN COAL CORP. AND
AFFILIATES

Date: *Aug. 31, 2016*            *S Benj Bryant*

S. Benjamin Bryant, WVSB No. 520
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
304-345-1234
sbbryant@csdlawfirm.com

Michael W. Carey, WVSB No. 635
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
304-345-1234
mwcarey@csdlawfirm.com

81

FOR THE GRANTOR
ENVIRONMENTAL FUND, LLC

Date: Aug. 31, 2016

STEVEN W. BALL, ~~Treasurer~~ Secretary
Wintergreen Hospitality Partners, LLC
(the sole member of Environmental Fund, LLC)
Environmental Fund, LLC
302 S. Jefferson Street
Roanoke, Virginia 24011
540-776-7890
steve.ball@bluestoneindustries.com

82

FOR THE TRUSTEE
UNITED BANK, INC.

Date: 8-31-16

WESLEY H. WHITE ESQ.
Trust Legal Counsel
United Wealth Management Group
United Bank, Inc.
514 Market Street
Parkersburg, WV 26101
304-357-5189 (Direct)
wesley.white@bankwithunited.com

83

FOR THE ISSUING BANK FOR THE LOC
CARTER BANK & TRUST

Date: 9-1-16

PHYLLIS Q. KARAVATAKIS
President
Carter Bank & Trust
1300 Kings Mountain Road
Martinsville, Virginia 24112
Phyllis.Karavatakis@carterbankandtrust.com
Telephone: (276) 656-1776
Facsimile: (276) 656-6765

84