*U.S. v. Southern Coal Corporation,* Civil Action No. 7:16-cv-00462-GEC

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,

        Plaintiffs,

    v.                        Civil Action No. 1:19-cv-00576

BLUESTONE COAL CORPORATION,

        Defendant.

## <u>CONSENT DECREE</u>

### I. RECITALS

WHEREAS, on August 6, 2019, after sending notice of alleged violations and their intent to file suit to the Administrator of the U.S. Environmental Protection Agency (EPA), to the Regional Administrator of EPA's Region 3 Office, to the West Virginia Department of Environmental Protection (WVDEP), to the Secretary of the Interior, to the Office of Surface Mining Enforcement and Reclamation, and to Defendant Bluestone Coal Corporation, Plaintiffs Ohio Valley Environmental Coalition, West Virginia Highlands Conservancy, Appalachian Voices, and the Sierra Club commenced this action alleging that Defendant is in violation of the selenium effluent limitations on Outlets 005, 006, 007, and 008, and certain terms and conditions of its March 12, 2014 WV/NDPES Permit No. WV1006304, as modified on June 21, 2016, the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), as amended, 33 U.S.C. § 1251 <u>et seq.</u>, the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1201 <u>et seq.</u>, and certain SMCRA performance standards. Plaintiffs' complaint seeks a declaratory

judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees;

WHEREAS, on June 3, 2020, the Court issued an order denying Defendant's motion to dismiss, holding that a federal consent decree entered by the United States District Court for the Western District of Virginia in an action brought against Defendant by the United States (*United States v. Southern Coal Corp.*, No. 7:16-cv-00462 (W.D. Va. 2016)) (hereinafter, the "*Southern Coal* consent decree) does not preclude Plaintiffs' citizen suit under 33 U.S.C. § 1365(b)(1)(B);

WHEREAS, on July 27, 2020, the Court issued an order granting in part and denying in part Plaintiffs' motion for partial summary judgment and denying Defendant's motion for summary judgment. Specifically, the Court (1) granted summary judgment on the issue of standing to Plaintiffs Ohio Valley Environmental Coalition, Appalachian Voices, and Sierra Club, (2) denied summary judgment on the issue of standing to Plaintiff West Virginia Highlands Conservancy, (3) granted summary judgment to Plaintiffs on the issue of liability under the Clean Water Act, (4) granted summary judgment to Plaintiffs on the issue of SMCRA liability, and (5) denied Defendant's motion for summary judgment for the reason that the *Southern Coal* consent decree does not preclude Plaintiffs' citizen suit under 33 U.S.C. § 1365(b)(1)(B);

WHEREAS, on September 25, 2020, WVDEP reissued Defendant's WV/NPDES Permit No. WV1006304, resulting in a change to the selenium effluent limitations at Outlets 005, 007, and 008 to "report only" for the end-of-pipe concentration, but adding a fish tissue limit at those outlets and making no change to the selenium effluent limitations at Outlet 006;

WHEREAS, during the term of the *Southern Coal* consent decree, Defendant has paid $414,500 for violations from June 2018 through June 2020 of the selenium effluent limitations at Outlets 005, 006, 007, and 008 of WV/NPDES Permit WV1006304;

WHEREAS, on September 4, 2020, the West Virginia Department of Environmental Protection and Defendant signed an Administrative Consent Order requiring Defendant to pay $125,000 (the statutory maximum) for violations at multiple permits held by Defendant, including violations from June 2018 through June 2020 of the selenium effluent limitations at Outlets 005, 006, 007, and 008 of WV/NPDES Permit WV1006304;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that the Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the Parties, and that this Decree is fair, reasonable, and in the public interest;

WHEREAS, pursuant to 33 U.S.C. §1365(c)(3) of the CWA, this Consent Decree is being forwarded to the United States Department of Justice (DOJ) and EPA for the statutorily-mandated forty-five (45) day review period; and

WHEREAS, the Parties consent to the entry of this Decree without trial of any issues.

NOW, THEREFORE, without this Consent Decree constituting any evidence or admission by any party with respect to any issue of fact or law herein, and upon consent of the parties hereto, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

1.     For purposes of this Consent Decree, the parties agree that this Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. § 1311 (federal question jurisdiction), Section 505(a) of the CWA (33 U.S.C. § 1365(a)), and Section 520 of SMCRA (30 U.S.C. § 1270).

2.     Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c), because it is the judicial district in which Defendant is located, resides, and/or does business, and/or in which the violations alleged in the Complaint occurred; pursuant to 33

U.S.C. § 1365(c)(1), because the sources of the alleged Clean Water Act violations are located in this judicial district; and pursuant to 30 U.S.C. § 1270(c)(1), because the surface coal mining operation at issue is located in this judicial district..

3.      For purposes of this Consent Decree, the Parties agree that the Complaint states a claim upon which relief may be granted against the Defendant.

4.      For purposes of this Consent Decree, and any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and consents to venue in this judicial district.

### III. APPLICABILITY

5.      Upon the Effective Date, the provisions of this Decree shall apply to and be binding upon, and inure to the benefit of, the Parties hereto, as well as to each individual Party's successors and assigns.

6.      No transfer of ownership of the Facility shall relieve Defendant of its obligations to ensure that the terms of this Consent Decree are implemented; provided, however, that prior to any transfer, if Defendant desires to transfer ownership of the Facility, Defendant shall provide a copy of this Consent Decree to the proposed transferee and require the transferee to provide written confirmation to Plaintiffs acknowledging the terms of the Consent Decree and that the transferee will be bound by those terms. In such event, the Defendant shall no longer be subject to this Decree. No further approval by the Court will be required for a transfer of ownership of the Facility pursuant to the terms of this paragraph; however, Defendant expressly reserves the right, in its sole discretion, to file a motion with the Court to modify this Decree to replace a new owner for the current owner.

7.    Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties include direct responsibility for compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.

## IV. DEFINITIONS

8.    Terms used in this Consent Decree that are defined in the Clean Water Act or in regulations issued pursuant thereto shall have the meanings assigned to them therein, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Complaint" shall mean the Complaint filed by Plaintiffs in this action on August 6, 2019;

b.    "Consent Decree" or "Decree" shall mean this Consent Decree and any appendices attached hereto;

c.    "CWA" shall mean the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.*;

d.    "Defendant" shall mean Bluestone Coal Corporation;

e.    "Effective Date" shall have the definition provided in Section XIII ("Effective Date");

f.    "Facility" shall mean Defendant's Red Fox Surface Mine in McDowell County, West Virginia;

g.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

h.    "Parties" shall mean Plaintiffs and Defendant;

5

i.     "Permit" shall mean WV/NPDES Permit WV1006304;

j.     "Plaintiffs" shall mean Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., Appalachian Voices, and Sierra Club;

k.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

l.     "WVDEP" shall mean the West Virginia Department of Environmental Protection;

m.     "WV/NPDES permit" shall mean a West Virginia/National Pollutant Discharge Elimination System permit issued by WVDEP pursuant to Section 402 of the CWA; and

n.     "WV1006304" shall mean WV/NPDES Permit No. WV1006304.

## V. INJUNCTIVE RELIEF

9.     Defendant is not currently operating in full compliance with the effluent limits for total selenium at Outlet 006, as provided in its September 25, 2020 WV/NPDES Permit No. WV1006304.

10.     Defendant shall bring its discharges from Outlet 006 of WV/NPDES Permit No. WV1006304 into compliance with the selenium effluent limitations in that permit within twelve (12) months of the Effective Date of this Decree.

11.     Defendant shall provide notice to Plaintiffs in accordance with Section __, infra, when it submits a compliance plan to WVDEP. If Defendant selects a compliance plan that involves pumping water from Outlet 006 or its associated facilities to another location in order to prevent noncompliant discharges from Outlet 006 (except in concert with a plan to inject such pumped water underground), then Plaintiffs shall be permitted the opportunity to comment to

WVDEP on Defendant's compliance plan whether or not such permit modification would ordinarily require public notice and comment.

## VI. REPORTING

12. For the period starting on the Effective Date of this Decree and ending on the termination of this Decree, Defendant shall provide Plaintiffs, through their counsel, with quarterly progress reports (issued on or around the 15th day of each January, April, July, and October). Such status reports shall (1) describe the status of Defendant's implementation of its compliance plan at Outlet 006, (2) include Defendant's discharge monitoring reports for WV/NPDES Permit WV1006304, (3) include any fish-tissue monitoring results for any such monitoring conducted in associations with WV/NPDES Permit WV1006304, and (4) itemize any stipulated penalties assessed and/or paid under the *Southern Coal* consent decree for selenium-related violations of WV/NPDES Permit WV1006304.

13. Any information provided under the reporting requirements of this Decree may be used by Plaintiffs in any proceeding to enforce provisions of this Decree.

## VII. CIVIL PENALTY

14. The Parties acknowledge that there is significant disagreement between them concerning the size of a monetary penalty, if any, for Defendant's violations of the selenium effluent limitations in WV/NPDES Permit WV1006304. It is also acknowledged that (a) Defendant previously paid stipulated penalties to the United States in the amount of $$414,500 for certain exceedances of the selenium effluent limitations at Outlets 005, 006, 007, and 008 of WV/NPDES Permit WV1006304, and (b) Defendant will pay penalties to WVDEP under the terms of the September 4, 2020 Administrative Consent Order for violations of the selenium effluent limitations at Outlets 005, 006, 007, and 008 of WV/NPDES Permit WV1006304. In order

to obtain resolution of this litigation without the need to incur further costs and expenses, Defendant has agreed to pay a civil penalty to the United States that Defendant believes is fair, just, and reasonable under the totality of circumstances.

15.     Not later than thirty (30) days after the Effective Date of this Decree, Defendant shall pay a civil penalty in the amount of $30,000 to the United States.  That payment shall be made by check or money order to the United States Treasury and should be sent to the following address: Alicia Kolaian, Litigation Support Specialist, Environment & Natural Resources Division, Office of Litigation Support, P.O. Box 7611, Ben Franklin Station, Washington, DC 20044-7611. The check or money order shall reference *Ohio Valley Environmental Coalition, Inc, et al. v. Bluestone Coal Corp.*, Case No. 1:19-cv-00576, and payment shall be considered paid upon mailing or direct delivery to the specified address. A copy of the check/money order and cover letter shall be sent to Plaintiffs, through their counsel, at the time payment is made and shall state that payment is being made pursuant to this Decree.

## VIII. ENVIRONMENTAL MITIGATION PROJECT

16.     Bluestone Resources, Inc., by the signature of its authorized representative on this Decree, hereby agrees to guarantee Defendant's obligation under this Sections VII and VIII of the Decree. Accordingly, the obligations of Defendant under this Section shall be treated as joint obligations of Bluestone Resources, Inc., for all purposes including, but not limited to, the enforcement of this Decree.

17.     Defendant and/or Bluestone Resources, Inc., shall pay a total of $270,000.00 to the West Virginia Land Trust in order to fund a Mitigation Project the Parties agree is intended to serve as mitigation for environmental harm alleged to have occurred in this case.

    a.      The Appendix to this Consent Decree describes the Mitigation Project.

b.     Defendant and/or Bluestone Resources, Inc., shall remit the amount identified in Paragraph 16 by check or money order to the West Virginia Land Trust in eleven (11) monthly installment payments, commencing on the 60th day after the Effective Date of this Decree and continuing on the first day of each month thereafter until Defendant has made eleven (11) payments. The first ten (10) payments shall be in the amount of $24,545.45, and the eleventh payment shall be in the amount of $25,545.50. To make a payment pursuant to this paragraph, Defendant and/or Bluestone Resources, Inc., shall send a check or money order to the following address:

> West Virginia Land Trust
> P.O. Box 11823
> Charleston, WV 25339-1823

The check or money order shall reference *Ohio Valley Environmental Coalition, Inc., et al. v. Bluestone Coal Corp.*, Case No. 1:19-cv-00576, and payment shall be considered paid upon mailing or direct delivery to the specified address. A copy of the check/money order and cover letter shall be sent to Plaintiffs at the time payment is made and shall state that payment is being made pursuant to this Decree.

18.     If Defendant and/or Bluestone Resources, Inc., fails to make a payment under the terms of this Section within 3 days of its due date, then the payment obligations of Defendant and Bluestone Resources, Inc., under this shall be accelerated, and Defendant and/or Bluestone Resources, Inc., shall pay the full amount of the balance then owed no later than the 15th day of the month in which the failure to timely make a monthly installment payment occurred.

19.     As described more fully in the Appendix, the Mitigation Project is intended to protect and preserve ecologically sensitive wetlands and floodplains along the Tug River.  These areas will serve as critical natural buffers, protected from development and mining through either

purchase or easement, to improve nutrient and sediment flows, water temperatures, aquatic and terrestrial habitat and improve the quality of life and aesthetics along the Tug River.

## IX. EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

20.     This Consent Decree in no way affects or relieves Defendant of its responsibility to comply with applicable federal, state and local laws, regulations and permits.

21.     This Consent Decree represents full and final settlement among the Parties.

22.     This Consent Decree resolves and discharges, and Plaintiffs release and waive, any and all civil claims, causes of action, demands, actions and/or rights of action that Plaintiffs may have against Defendant for violations of the Clean Water Act (including but not limited to all provisions of federal or federally-enforcement state water quality regulations) at the Facility occurring on and before the Date of Entry of this Consent Decree by the Court.

23.     The Parties further agree that the Consent Decree resolves and discharges, and Plaintiffs release and waive, any and all civil penalties and injunctive relief of any kind under 33 U.S.C. § 1365 for any violations of effluent limits for total selenium in WV/NPDES Permit WV1006304 that may have occurred or may occur up to and including twelve (12) months after the Effective Date of this Consent Decree.

24.     Plaintiffs do not, by their consent to the entry of this Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Decree shall result in compliance with provisions of the CWA or with any other provisions of federal, state or local laws, regulations, or permits.

## X. RESOLUTION OF ATTORNEYS' FEES AND COSTS

25.     This Decree does not resolve Plaintiffs' claims pursuant to 33 U.S.C. § 1365(d) and 30 U.S.C. § 1270(d) for costs of litigation and attorneys' fees incurred in this action, although it does resolve the timing of Defendant's payment of any award of fees and/or costs.

26.     Plaintiffs may assert those claims through a fee motion filed within fourteen (14) days of the entry of this Decree, or in accordance with any other deadline set by the court.

27.     Defendant may challenge Plaintiffs' entitlement to costs and fees and the amount thereof before the district court and on appeal.

28.     All parties recognize that this Decree may itself be used as evidence of the resolution and results of the instant litigation.

29.     Bluestone Resources, Inc., by the signature of its authorized representative on this Decree, hereby agrees to guarantee Defendant's obligation under this Section to pay any award of costs and/or fees ordered by the Court. Accordingly, the obligations of Defendant under this Section shall be treated as joint obligations of Bluestone Resources, Inc., for all purposes including, but not limited to, the enforcement of this Decree.

30.     If the Court enters an order granting Plaintiffs' motion for fees and costs within 12 months of the date that the Parties signed this Decree, then Defendant and/or Bluestone Resources, Inc., shall pay the full amount of any fee and cost award in equal monthly installments commencing on the first day of the month following the entry of an order on Plaintiffs' motion for fees and costs and ending on the first day of November 2021. If Defendant and/or Bluestone Resources, Inc., fails to make a payment under the terms of this paragraph within 3 days of its due date, then obligation of Defendant and Bluestone Resources, Inc., to pay the fee and cost award shall be accelerated, and Defendant and/or Bluestone Resources, Inc., shall pay to Plaintiffs the full amount

of the balance then owed no later than the 15th day of the month in which the failure to timely make a monthly installment payment occurred.

31.     If the Court enters an order granting Plaintiffs' motion for fees and costs more than 12 months after the date that the Parties signed this Decree, then Defendant shall pay the full amount of any fee and cost award on the first day of the month following the entry of an order on Plaintiffs' motion for fees and costs.

32.     To make a payment pursuant to Paragraphs 30 or 31, supra, Defendant shall deliver to Plaintiffs' counsel a check made payable to Appalachian Mountain Advocates, Inc., which shall be wholly responsible for the proper distribution of any portions of the delivered sum to any and all other attorneys, experts or other entities who may be entitled thereto.

33.     Plaintiffs do not waive, and expressly reserve, the right to move for additional fees and costs incurred by Plaintiffs after the entry of the Consent Decree to seek and obtain the Court's enforcement of the terms of this Decree. Likewise, Defendant does not waive, and expressly reserves, the right to oppose such motions for additional fees and costs.

## XI. NOTICES

34.     Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To Plaintiffs:

Derek Teaney
Appalachian Mountain Advocates, Inc.
P.O. Box 507
Lewisburg, WV 24901

To Defendant:

Steven W. Ball

Vice President & General Counsel
Bluestone Coal Corporation
Bluestone Resources
302 South Jefferson Street
Roanoke, Virginia 24011

35.     Any Party may, by written notice to the other Parties, change its designated recipient or notice address provided above.

36.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII. EFFECTIVE DATE

37.     The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter this Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIV. RETENTION OF JURISDICTION

38.     The Court shall retain jurisdiction over this action until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree, enforcing the terms of this Decree, or entering orders modifying this Decree pursuant to Section XV ("Modification"), or effectuating or enforcing compliance with the terms of this Decree.

39.     The Parties reserve all legal and equitable rights and defenses available to them to enforce or defend against enforcement of the provisions of this Consent Decree. Before a Party invokes the Court's jurisdiction to resolve a dispute among the Parties, the Party shall send a written notice to the other Party outlining the nature of the dispute and requesting informal negotiations among the Parties to resolve the matter.  If the Parties are unable to resolve the matter within 30 days from the date of the notice (or within an additional period of time agreed to by the parties), the noticing Party shall provide the other Party with a subsequent written notice giving an

opportunity to remedy such asserted breach within a reasonable time period (no less than 30 days) of receiving this notice. If the asserted breach is not cured within the applicable time period, any Party may seek relief from the Court.

## XV. MODIFICATION

40.    Except as otherwise provided in Paragraph 6, the terms of this Consent Decree, including the attached appendices, may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XVI. TERMINATION

41.    At such time as all payments that Defendant is obligated to make hereunder have been paid in full, or by eighteen (18) months after the Effective Date of this Decree, whichever is later, the Parties shall promptly file with the Court a joint stipulation of dismissal.

## XVII. LODGING AND ENTRY OF DECREE

42.    The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Consent Decree.

43.    Pursuant to 33 U.S.C. §1365(c)(3), this Consent Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of 45 days. After the review period has elapsed, the Consent Decree may be entered by the Court. If the Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

44.    The Parties agree to cooperate in good faith in order to expeditiously obtain EPA and United States Attorney General (Department of Justice, or "DOJ") review and District Court approval. In the event that DOJ or EPA comments upon the terms of this Consent Decree, the

Parties agree to discuss such comments to support the entry of the Consent Decree or to make revisions to the Consent Decree as the Parties determine may be appropriate.

## XIX. SIGNATORIES/SERVICE

45.     Each undersigned representative of Plaintiffs and Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

46.     The Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XX. INTEGRATION

47.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between and amongst the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the Terms of this Decree.

## XXI. FINAL JUDGMENT

48.     Upon approval and entry of this Consent Decree by the Court, this Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Rules 54 and 58 of the Federal Rules of Civil Procedure.

## XXII. APPENDIX

A Letter from the West Virginia Land Trust describing the mitigation project is included as an Appendix to this Decree.

ENTERED: _____February 17, 2021_____

_Daniel A. Faber_

DAVID A. FABER
UNITED STATES DISTRICT COURT JUDGE

For the Plaintiffs Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Appalachian Voices, and Sierra Club

_Vivian Stockman_                                      Dated: ___11/23/2020___

Vivian Stockman
Ohio Valley Environmental Coalition

_Peter Morgan_                                      Dated: ___11/23/2020___

Peter Morgan
Sierra Club

_____                 Dated: _____

Cindy Rank
West Virginia Highlands Conservancy

_Erin Savage_                                      Dated: ___11/23/2020___

Erin Savage
Appalachian Voices

For the Defendant Bluestone Coal Corporation

_James C. Justice III_                             Dated: _12/2/20_

James C. Justice III

16

For Bluestone Resources, Inc.

_____
James C. Justice III

Dated: _12/2/20_____

ENTERED: _____


                         _____
                         DAVID A. FABER
                         UNITED STATES DISTRICT COURT JUDGE


For the Plaintiffs Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Appalachian Voices, and Sierra Club


_____     Dated: _____
Vivian Stockman
Ohio Valley Environmental Coalition


_____     Dated: _____
Peter Morgan
Sierra Club


_____     Dated: 11/23/2020
Cindy Rank
West Virginia Highlands Conservancy


_____     Dated:_____
Erin Savage
Appalachian Voices


For the Defendant Bluestone Coal Corporation


_____     Dated: _____
James C. Justice III

# Appendix: West Virginia Land Trust Mitigation Letter



PO Box 11823 | Charleston, West Virginia 25339-1823
info@wvlandtrust.org | office 304.346.7788 | fax 304.342.1639

November 10, 2020

**Mitigation Project**

### I.     SUMMARY

Funds provided under section VIII of the Consent Decree in Civil Action 1:19-576 (S.D. W. Va.) shall be used by the West Virginia Land Trust to purchase land or easements on property adjacent to the Tug River, that will have a positive effect on water quality in the watershed.

### II.     OVERVIEWS OF THE WEST VIRGINIA LAND TRUST

The West Virginia Lant Trust (WVLT) is a private, nonprofit, charitable, 501(c)(3) corporation governed by a volunteer board of directors with offices in Morgantown and Charleston WV.  As a statewide land trust, the organization has flexibility to work in all areas of the state; however, as a previous recipient of mitigation money under federal consent decrees, much of WVLT's work has focused on specific watersheds where industry violations of the Clean Water Act have occurred.   WVLT has an excellent record of stewarding the funds as directed by each consent decree.

When evaluating properties for protection, WVLT focuses on the following criteria:

**Size:** WVLT typically selects projects that are 50 acres or larger.  In certain situations, small parcels may have ecological or community significance and, in those cases, we will evaluate the importance of the parcel to our mission and either accept, decline, or assist with alternative partnerships.

**Location:** WVLT prefers to increase the total area of protected lands in West Virginia by focusing on protecting land that adjoins protected spaces (e.g., federal, state, local forest/park, or trail that is protected by a conservation organization) or improves access to public recreation or protects and improves water quality.

**Use:**  WVLT prioritizes lands that serve a purpose or have a use consistent with the local, state, or federal plans, or public priorities (e.g. conservation programs, master plans, farmland protection lands, or watershed protection plans.)

**Environmental Features:**  WVLT seeks land with important environmental features, including:

- Ecologically important water frontage
- Wetlands and floodplains, important to water quality
- Habitat for rare threatened and endangered species
- Important wildlife corridors, as identified by wildlife experts
- Exemplary natural ecosystems
- Land containing springs or headwaters streams of high water-quality that contributes to the overall quality of lakes, rivers, and groundwater

### III. APPROACH AND PROJECT GOALS

While WVLT has not identified a specific parcel of land, it is part of a new effort to coordinate and develop a Tug River Water Trail that will provide a recreational corridor and watershed protection in the Tug River watershed.

WVLT will dedicate project funding to acquiring, through purchase or easement, land along the Tug River Water Trail, the preservation and protection of which will lead to water quality improvement in the Tug River watershed. Projects will be selected in the following order of priority:

   a) The highest priority will be given to projects that protect, preserver and improve the environmental conditions in the Tug River itself. This will involve focusing on riparian areas that are high quality forest, or can be returned to high quality forest. Such areas are critical natural buffers that filter and protect adjoining water from upland activities and by doing so improve nutrient and sediment flow, water temperatures, aquatic and terrestrial habitat, and provide landscape buffers that improve the quality of life and aesthetics of the Tug River.

   b) Secondary priority will be given to projects that provide access to public recreation and which can increase awareness of the need for watershed protection in the Tug River Watershed.

   c) In the event that no suitable land along the Tug River is acquired within 3 years, WVLT will shift focus to acquiring riparian land in another portion of the Big Sandy River Watershed, including in tributaries of the Tug River.

   d) WVLT will facilitate protection of working lands (including small family farms and woodlands) from development by assisting the landowner in minimizing future destruction by inappropriate development and management practices.

In carrying out this project, WVLT may employ a variety of tactics to facilitate protection of land, including the use of easements and outright purchase of land. As a matter of policy, the WVLT only accepts land which has either mineral rights intact, or where WVLT can secure a surface use agreement with the mineral owner. In this way lands acquired by WVLT are protected from future degradation from mineral extraction.

### IV. USE OF FUNDS

WVLT agrees to use the funds as described in this letter and as further described in the Consent Decree entered in Civil Action No. 1:19-576. Under no circumstances will WVLT use the funds for lobbying purposes. When all funds have been expended, WVLT will provide a report to the Court, to the parties, and to the U.S. Department of Justice describing how funds were used.