*U.S. v. Southern Coal Corporation,* Civil Action No. 7:16-cv-00462-GEC

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB

     Plaintiffs,

v.                        CIVIL ACTION NO. 1:19-00576

BLUESTONE COAL CORPORATION,

     Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

     Pending before the court are plaintiffs' motion for partial summary judgment, (ECF No. 54), and defendant's motion for summary judgment. (ECF No. 56.) For the reasons that follow, plaintiffs' motion for partial summary judgment is **GRANTED in part and DENIED in part,** and defendant's motion for summary judgment is **DENIED.**

I.   <u>**Factual and Procedural Background**</u>

     *A. The 2016 Consent Decree*

   Defendant Bluestone Coal Corporation ("defendant") is a subsidiary of Southern Coal Corporation ("SCC"), (ECF No. 9), and is therefore subject to the Consent Decree entered against SCC by the U.S. District Court for the Western District of Virginia on December 19, 2016. (ECF No. 8, Ex. 1.) The Consent Decree applies to all "facilities" and "future facilities" of SCC and

therefore includes the Red Fox Surface Mine, which is owned and operated by defendant.  (ECF No. 8, Ex. 1 ¶¶ 7, 14.dd, 14.gg.)

The Consent Decree sets forth a scheme of stipulated penalties for violation for effluent limit exceedances (daily, monthly or quarterly, as required by permits), failures to sample, reporting violations, non-compliance with terms of the Consent Decree, and for persistent non-compliance.  (See ECF No. 8, Ex. 1 ¶¶ 84-96.) SCC must calculate stipulated penalties for violations, which are then included in the quarterly reports, and which must be paid by the date the quarterly reports are submitted.  Those penalties as a non-exclusive remedy that would qualify for an offset against any statutory penalties that are subsequently assessed.  (Id. Ex. 1 ¶¶ 84-102.)  The Consent Decree also contained a provision that "[t]his Consent Decree does not . . . limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law."  (Id. Ex. 1 ¶ 128.)

### B. Red Fox Mine violations in the Consent Decree

The Consent Decree only adjudicated and prosecuted the violations of permit limitations identified in Appendix F.  (Id. Ex. 1 ¶ 122; see also ECF No. 11, Ex. C (relevant excerpts of Appendix F).)  Identified within Appendix F were a set of violations of West Virginia National Pollution Discharge Elimination System ("NPDES") Permit No. WV1006304 at defendant's

Red Fox Surface Mine.  (ECF No. 11, Ex. C.)  Those violations occurred between April 2011 and June 2015, and included some violations of specific permit limitations at Red Fox Mine Outlets 001-008, 020, and 046, but the Consent Decree did not list or include any violations of the permit limitations for selenium at Outlets 005-008 chiefly at issue in this case.  (See id.)  Thus, there is no overlap between the violations prosecuted in the 2016 Consent Decree and those alleged in the present action.

The Red Fox Mine operates under WV/NPDES Permit WV1006304 and WV/SMCRA Permit S007282.  (See ECF No. 9, Ex. 2.)  The West Virginia Department of Environmental Protection ("WVDEP") renewed that permit on March 12, 2014, for a five-year term ending on August 13, 2018.  (ECF No. 55, Ex. B.)  WVDEP has administratively extended the permit until August 13, 2020.  (Id. Ex. C.)  At the time the Consent Decree was entered, defendant's WV/NPDES Permit No. WV1006304 did not contain a numerical effluent limit for selenium at Outlets 005-008.  (See ECF No. 11, Ex. E.)  Instead, the permit only contained a compliance schedule for selenium at those outlets.  (See id. Ex. E.)  That schedule was imposed in a permit modification that the WVDEP issued on June 21, 2016.  (Id. Ex. E.)  Under that modification, defendant had to monitor and report the selenium concentration at those outlets until June 22, 2018, but on and after June 22, 2018,

3

defendant's discharges at Outlets 005-008 had to comply with numerical effluent limits for selenium.[1]  (See id. Ex. E.)

### C. Defendant's permit violations and plaintiffs' suit

According to its quarterly reports, defendant violated its monthly average selenium limit 60 times and its daily maximum selenium limit 78 times at Outlets 005, 006, 007, and 008 from July 2018 through March 2020.  (ECF No. 54, Ex. F.)  Defendant does not deny that that its discharges at these Outlets exceeded permitted levels for selenium discharge.  (ECF No. 57.)

On June 4, 2019, plaintiffs mailed notice of the violations and their intent to file suit in letters addressed to defendant, the EPA, OSMRE, and the WVDEP, as required by § 505(b)(1)(A) of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(b)(1)(A), and § 520(b)(1)(A) of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270(b)(1)(A).  After waiting the required sixty days, during which neither the EPA, OSMRE, and/or the WVDEP commenced an action to redress the alleged violations, on August 6, 2019, plaintiffs filed the instant Complaint against defendant pursuant to the citizen suit provisions of the CWA, 33 U.S.C. §§ 1251 et seq., and SMCRA, 30 U.S.C. §§ 1270 et seq.  Plaintiffs' suit seeks declaratory and injunctive relief as well as civil penalties against defendant for selenium limit violations at

---

[1] Those limits are a monthly average of 4.7 µg/l and a daily maximum of 8.2 µg/l.  (Id. Ex. E.)

4

Outlets 005-008 at the Red Fox Surface Mine.  (ECF No. 1.)  The
court notes that the Complaint does not address or seek relief
for defendant's violations of its compliance schedule for
construction of a selenium treatment system.  (See ECF No. 1.)

Defendant, through SCC, paid approximately $278,000 in
stipulated penalties for those selenium effluent violations at
Red Fox Mine occurring from July 2018 to June 30, 2019.  (ECF No.
9.)  Defendant states it has also paid additional stipulated
penalties for violations occurring after June 30, 2019.  (ECF No.
57.)  However, defendant has paid no stipulated penalties for 40
violations of the daily maximum selenium limit at Outlets 005-008
from July 2018 through the first quarter of 2020.  (See ECF No.
58, Ex. A.)

### D. Denial of Motion to Dismiss

Defendant filed a motion to dismiss on September 25, 2019,
arguing that plaintiff's suit was precluded by the Consent
Decree.  (See ECF Nos. 8, 9.)  On June 3, 2020, this court
entered its Memorandum Opinion and Order denying defendant's
motion to dismiss.  (ECF No. 60.)  The court held that the
Consent Decree did not preclude plaintiffs' suit because the
Consent Decree was not being diligently prosecuted.  The court so
found for the following reasons:  the Consent Decree was not
designed to require compliance with the permit violations at

5

issue in plaintiffs' Complaint; plaintiffs' claims were not related in origin and were separate and distinct from the violations in the Consent Decree; the court was not convinced that the Consent Decree will ensure defendants' compliance with its permit limits; and the Consent Decree did not remove defendant's economic incentives to violate its permit limits at Outlets 005-008.  (See id.)  The court also found that plaintiffs possessed Article III standing, as injury-in-fact, causation, and redressability were all present.  (See id.)

### E. Motions for Summary Judgment

Plaintiffs filed a motion for partial summary judgment on May 8, 2020.  (ECF No. 54.)  Plaintiffs contend that summary judgment is appropriate on the issues of statutory and constitutional standing, and on liability.  (ECF No. 55.)  Defendant did not file a brief opposing plaintiffs' motion for partial summary judgment on either standing or liability.

Defendant also filed a motion for summary judgment on May 8, 2020.  (ECF No. 56.)  Defendant seeks summary judgment on the same grounds it argued in its motion to dismiss – that plaintiffs' suit is precluded because the Consent Decree is being diligently prosecuted.  Plaintiffs filed a response on May 22, 2020, (ECF No. 58), and defendant filed its reply on May 29, 2020.  (ECF No. 59.)  The arguments made in these briefs closely

follow the arguments set forth in the briefings on defendant's motion to dismiss.

## I.   Standard of Review for Summary Judgment

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable juror could return a verdict for the non-movant.  <u>Id.</u>

The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  <u>Id.</u> at 322.  If the moving party meets its burden, then the non-movant must set forth specific facts that would be admissible in

7

evidence that demonstrate the existence of a genuine issue of
fact for trial.  Id. at 322-23.

## II.  Summary Judgment Analysis

### A. Plaintiff's motion for partial summary judgment

#### i.  Plaintiffs' members' standing

To satisfy Article III's standing requirements, a plaintiff
must show:  (1) it has suffered an "injury in fact" that is (a)
concrete and particularized and (b) actual or imminent, not
conjectural or hypothetical; (2) the injury is fairly traceable
to the challenged action of the defendant; and 3) it is likely,
as opposed to merely speculative, that the injury will be
redressed by a favorable decision.  Friends of the Earth, Inc. v.
Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).
Plaintiffs' members can show all three requirements.

Dustin White is a member of OVEC and Erin Savage belongs to
Appalachian Voices and Sierra Club.  Mr. White has visited the
receiving streams several times over the last four or five years,
including in December 2019, and intends to return in the future.
(ECF No. 54, Ex. L, White Decl., ¶¶ 4, 12, 13.)  Mr. White
refrains from fishing in the streams because they are impaired by
mine pollution.  (Id., ¶ 14.)  Ms. Savage has visited the
receiving streams since 2014, including in 2019, and intends to
return in the future.  (ECF No. 54, Ex. M, Savage Decl., ¶¶ 9,

8

14, 16.)  Her aesthetic enjoyment of those streams is lessened because she knows that the streams are listed as impaired for selenium, and that selenium can adversely affects the aquatic life and fish in the streams.  (Id., ¶¶ 6-8, 10-11.)

To establish injury-in-fact, "a plaintiff need only show that he [or she] used the affected area and that he [or she] is an individual for whom the aesthetic and recreational values of the area [are] lessened by the defendant's activity."  Piney Run Preservation Ass'n v. County Com'rs of Caroll County, MD, 268 F.3d 255, 263 (4th Cir. 2001) (internal quotation marks omitted; modification in original).  Concerns about selenium pollution are sufficient to support a finding that a user of the affected stream has a particularized injury.  See Ohio Valley Envtl. Coal., Inc. v. Consol of Kentucky, Inc., 2014 WL 1761938, at *14 (S.D.W. Va. Apr. 30, 2014) (Chambers, C.J.).  Here, plaintiffs' members use the streams into which defendant discharges and the downstream waters of the Tug River, and they have concrete aesthetic and recreational interests that are harmed by defendant's selenium discharges.  This satisfies the injury-in-fact requirement.

To satisfy the traceability prong, the Fourth Circuit has explained that "a plaintiff 'must merely show that a defendant discharges a pollutant that causes or contributes to the kind of

injuries alleged' in the specific geographic area of concern." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 161 (4th Cir. 2000) (quoting Resources Defense Council, Inc. v. Watkins, 954 F.2d 974, 980 (4th Cir. 1992)). The traceability prong for standing is met when "declarants claim that the injuries resulted from elevated pollution in the same streams into which [defendant] discharge[s] pollutants including selenium." Ohio Valley Envtl. Coalition v. Marfork Coal, 2013 WL 4509601, at *5 (S.D.W. Va. Aug. 23, 2013) (Chambers, C.J.). Defendant's own monitoring and reporting data show it is discharging excessive levels of selenium from Outlets 005-008. This satisfies the traceability requirement.

Plaintiffs seek civil penalties for defendant's violations, among other remedies such as an injunction requiring defendant to immediately comply with the effluent limitations within permit WV1006304. (See ECF No. 1.) The Supreme Court has made clear that civil penalties provide a valid form of redress. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185-86 (2000) ("To the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct."). Thus,

plaintiffs' claims are redressable because they seek a remedy that this court possesses the power to grant and which would redress their injuries "by abating current violations and preventing future ones." Id. at 187 (2000).

### ii. Plaintiffs' organizational standing

An organization has representational standing when: (1) at least one if its members would have standing to sue in his or her own right; (2) the organization's purpose is germane to the interests that it seeks to protect; and (3) there is no need for the direct participation of the individual members in the action. Gaston Copper Recycling, 204 F.3d at 155 (citing Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

Three of the plaintiff organizations are represented by at least one member who would have standing to sue in his or her own right: Dustin White is a member of OVEC and Erin Savage belongs to Appalachian Voices and Sierra Club. (ECF No. 54, Ex. L, White Decl., ¶ 2; id., Ex. M, Savage Decl., ¶¶ 2-4.) Therefore, OVEC, Appalachian Voices, and Sierra Club satisfy the first prong of organizational standing. However, the court has reviewed the record and finds that it has not been provided any evidence that plaintiff organization West Virginia Highlands Conservancy has a member who would have standing to sue in his or her own right.

As to the second prong, the court finds that this suit is germane to the purposes of plaintiff organizations OVEC, Appalachian Voices, and Sierra Club.  (See id., Ex. L, White Decl., ¶ 2; id., Ex. M, Savage Decl., ¶¶ 3-4.)  The court finds that this suit is also germane to the purposes of plaintiff West Virginia Highlands Conservancy.  (See ECF No. 1, ¶ 11.)

Lastly, because this action is one for injunctive and declaratory relief and not for monetary damages, the nature of the redress supports the conclusion that individual members are not required to participate in the action.  Cf. Ohio Valley Envtl. Coalition v. Fola Coal Co., 274 F. Supp. 3d 378, 387 (S.D.W. Va. 2017) (Chambers, C.J.).  All four organizational plaintiffs therefore satisfy the third prong for organizational standing.

As there is no genuine issue as to any material fact as to standing regarding plaintiff organizations OVEC, Appalachian Voices, and Sierra Club, the court hereby **GRANTS** summary judgment on the issue of standing to plaintiff organizations OVEC, Appalachian Voices, and Sierra Club.  However, because there is a genuine issue of material fact as to standing regarding plaintiff West Virginia Highlands Conservancy, the court hereby **DENIES** summary judgment on the issue of standing to plaintiff organization West Virginia Highlands Conservancy.

### iii. Statutory standing

As to statutory standing requirements, OVEC sent the required 60-day notice letter prior to filing suit under the CWA and SMCRA, and plaintiffs waited more than the required 60 days before filing the Complaint.  Fola Coal, 274 F. Supp. 3d at 387–88 (citing 33 U.S.C. § 1365(b)(1)(A); 30 U.S.C. § 1270(b)(1)(A)); see also ECF No. 54, Ex. I, Becher Decl., ¶ 2. The notice letter alleged violations of both the selenium discharge limits and the construction schedule for the selenium treatment system.  (Id., Ex. I, Becher Decl., Ex. 1.)  Plaintiffs have shown that neither WVDEP nor EPA has filed the type of administrative or judicial enforcement action that has preclusive effect on this citizen suit.  Plaintiffs therefore have statutory standing to sue and meet all jurisdictional requirements under both the CWA and SMCRA.

Additionally, plaintiffs have satisfied the jurisdictional standard set forth in Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, 484 U.S. 49 (1987).  In that case, the Supreme Court held that to invoke the jurisdiction of the federal courts, citizen plaintiffs must "allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future."  Id. at 57.  On remand from the Supreme Court, the Fourth Circuit held

13

that the plaintiffs could establish jurisdiction under this standard "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 844 F.2d 170, 171-72 (4th Cir. 1988).

Here, the present case satisfies the first test for proving ongoing violations. Plaintiffs' complaint was filed on August 6, 2019. (ECF No. 1.) Defendant's reports show that it violated its selenium limits at Outlets 005-008 in every month from August 2019 through February 2020. (ECF No. 54, Exs. D, E, F.) Defendant also has still not built the selenium treatment system that its permit requires. Accordingly, the risk of further violations has not been eliminated. See Gwaltney of Smithfield, 844 F.2d at 172 (4th Cir. 1988). This court therefore has subject matter jurisdiction over defendant's selenium permit violations from Outlets 005-008.

### iv. Liability under the CWA

Summary judgment may be rendered on the issue of liability alone, although there may be an issue as to the remedy. Fed. R. Civ. P. 56(a). The Supreme Court has explained that "[w]here the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  Here, there are no genuine issues of material fact as to defendant's liability.

Enforcement of the Clean Water Act ("CWA") is "intentionally straightforward."  <u>United States v. CPS Chemical Co., Inc.</u>, 779 F. Supp. 437, 442 (E.D. Ark. 1991).  The CWA achieves the goal of expedited enforcement in two ways.  First, it places the burden of measuring and reporting pollutant levels on permit holders. Enforcement is thus made easy and inexpensive because evidence of violations must be compiled and documented by the permit holders themselves.  <u>PIRG v. Elf Atochem</u>, 817 F. Supp. 1164, 1178 (D.N.J. 1993).  Second, the CWA imposes strict liability for permit violations.  <u>Am. Canoe Ass'n v. Murphy Farms</u>, 412 F.3d 536, 540 (4th Cir. 2005) ("[T]he CWA creates a regime of strict liability for violations of its standards.").  A discharger's culpability or good faith does not excuse a violation.  <u>CPS Chemical</u>, 779 F. Supp. at 442.  Consequently, a violation of a permit requirement by a discharger is an automatic violation of the CWA.  <u>PIRG v. Rice</u>, 774 F. Supp. 317, 325 (D.N.J. 1991).  As this court has observed, when determining liability under the CWA, "[a]ll the court . . . is called upon to do is compare the allowable quantities of pollution listed in the permits with the available

statistics on actual pollution.'"  Ohio Valley Envtl. Coal., Inc.
v. Hobet Min., LLC, 723 F. Supp. 2d 886, 896 (S.D.W. Va. 2010)
(Chambers, J.).

   Defendant prepared and submitted the DMRs and quarterly
reports on which plaintiffs base this motion.  Federal and state
regulations required defendant to certify under penalty of
perjury that the monitoring results in its DMRs were accurate. 40
C.F.R. §§ 122.22(b),(d); id. § 122.41(k)(1); W. Va. Code R. § 47-
30-4.7.d.  Defendant's quarterly reports under the 2016 Consent
Decree require the same certification.  (ECF No. 8, Ex. 1.)
Based on defendant's own reported violations, the court finds
that there is no genuine issue of material fact that defendant is
liable for 60 violations of its monthly average limit for
selenium and 78 violations of its daily maximum limit for
selenium.  (See ECF No. 54, Ex. F.)

   Each violation of a monthly average limit is treated as a
violation for every day in the month in which the violation
occurred, rather than as a single violation for that month.
United States v. Smithfield Foods, Inc., 972 F. Supp. 338, 340
(E.D. Va. 1997), aff'd, 191 F.3d 516, 527 (4th Cir. 1999).
Defendant's 60 monthly average violations therefore comprise
1,826 days of violation.  (See ECF No. 54, Ex. F.)  Adding those

to defendant's 78 days of violation of its daily maximum limit results in a total of 1,904 days of violation under the CWA.

Defendant is also liable for violating the compliance schedule in its 2016 WV/NPDES permit for construction of a selenium treatment system.  Section 1365(f) of the CWA defines an enforceable effluent standard or limitation as "a permit or condition thereof issued under section 1342 of this title."  33 U.S.C. §1365(f).  Defendant's WV/NPDES permit imposed a construction schedule for a selenium treatment system as an enforceable condition of its permit.  See Locust Lane v. Swatara Twp. Auth., 636 F. Supp. 534, 539 (M.D. Pa. 1986) ("there is no reason to distinguish between effluent limitations and compliance schedules for purposes of § 1365").  Furthermore, the legislative history of the CWA provides that "citizens are granted authority to bring enforcement actions for violations of schedules or timetables of compliance . . . ."  S. Rep. No. 414, 92nd Cong., 2d Sess., reprinted in 1972 U.S. CODE CONG. & AD. NEWS 3668, 3747.

Each day that defendant violated the compliance schedule is an additional day of violation.  Defendant has been in violation of the compliance schedule since at least the June 21, 2017 deadline to commence construction of a selenium treatment system.  The court has no indication that, since the filing of plaintiffs' motion for summary judgment, defendant has commenced construction

17

of a selenium treatment system.  Therefore, as of July 24, 2020,
that constitutes 1,129 days of violation.  Altogether then, there
is no genuine issue of material fact that defendant is liable for
3,033 days of violations of the CWA.  For these reasons, the
court hereby **GRANTS** summary judgment to plaintiffs on the issue
of liability under the CWA.

### v. Liability under SMCRA

Defendant's violations of the selenium effluent limitations in
its WV/NPDES permit are also violations of its state-issued
Surface Mining Control and Reclamation Act ("SMCRA") permit.
Coal mines are also subject to regulation under SMCRA and the
West Virginia Surface Coal Mining and Reclamation Act
("WVSCMRA").  The scheme under the SMCRA is somewhat different
from the CWA, exhibiting greater deference to the states.  See
Bragg v. W.Va. Coal Ass'n, 248 F.3d 275, 293 (4th Cir. 2001).
SMCRA was enacted to "strike a balance between the nation's
interests in protecting the environment from the adverse effects
of surface coal mining and in assuring the coal supply essential
to the nation's energy requirements."  Id. at 288 (citing 30
U.S.C. § 1202(a), (d) and (f)).  To achieve these goals, SMCRA
relies on "a program of cooperative federalism that allows
States, within limit established by federal minimum standards, to
enact and administer their own regulatory programs, structured to

18

meet their own particular needs." Molinary v. Powell Mountain Coal Co., Inc., 125 F.3d 231, 234 (4th Cir. 1997) (citing Hodel v. Va. Surface Min. & Reclam. Ass'n, 452 U.S. 264, 289 (1981)).

West Virginia's federally-approved SMCRA standard provides that SMCRA permittees "shall not violate effluent limitations." W. Va. Code R. § 38-2-14.5.b. A citizen may commence a citizen suit "against any other person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]." 30 U.S.C. § 1270(a)(1). Although Bragg precludes plaintiffs from bringing a claim based upon the violations of federal regulations, plaintiffs may pursue a claim based on violations of state regulations passed pursuant to SMCRA, and therefore plaintiffs can enforce West Virginia's SMCRA performance standard against WVSMCRA permittees, such as defendant. Ohio Valley Envtl. Coal., Inc. v. Apogee Coal Co., LLC, 531 F. Supp. 2d 747, 760-64 (S.D.W. Va. 2008) (Chambers, J.) (allowing citizen plaintiffs to "pursue their claim based on violations of state regulations passed pursuant to SMCRA").

Summary judgment on liability may be granted under both statutes. See, e.g., Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co., 808 F. Supp. 2d 868, 898-99 (S.D.W. Va. 2011) (Chambers, J.) (granting summary judgment to plaintiffs under both the CWA and SMCRA for violations of selenium limits in a

19

mining company's WV/NPDES permit).  There is no genuine issue of material fact that defendant is liable for 60 monthly average effluent limitation violations and 78 daily maximum effluent limitation violations, for a total of 138 SMCRA violations.  For these reasons, the court hereby **GRANTS** summary judgment to plaintiffs on the issue of SMCRA liability.

### B. Defendant's motion for summary judgment

The court previously rejected defendant's preclusion argument in its order denying defendant's motion to dismiss. (See ECF No. 60.)  The court has reviewed the briefings and the record and finds no valid reason to overturn its earlier judgment.  The court again finds that the Consent Decree is not being diligently prosecuted as to selenium violations at Outlets 005-008 at defendant's Red Fox Surface Mine, and thus plaintiffs' suit is not precluded.  The court therefore **DENIES** defendant's motion for summary judgment for the reasons expressed in its earlier order.  (See id.)

### C. Remaining Issues

As the parties noted in the Integrated Pretrial Order, (ECF No. 68), if plaintiffs' motion for partial summary judgment is granted, there will be no need to hear evidence on jurisdiction and liability, and the trial will be limited to the issues of the amount of civil penalties and the scope and timing of injunctive

relief.  The court has herein so granted plaintiffs' motion for partial summary judgment and denied defendant's motion for summary judgment.

Therefore, as the parties also identified in the Integrated Pretrial Order, there are two remaining contested issues of fact and law:  1) whether defendant should be assessed a civil penalty under the CWA for its violations of the terms and conditions of its WV/NPDES Permit, and if so, the appropriate amount; and 2) whether defendant should be enjoined to compel compliance with the CWA and SMCRA and be required to install selenium treatment systems at any or all outlets with continuing selenium violations, and, if so, the timeframe of the systems' completion.

I.   **Conclusion**

For the reasons expressed above, plaintiffs' motion for partial summary judgment is **GRANTED in part and DENIED in part**, and defendant's motion for summary judgment is **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED this 27th day of July, 2020.

Enter:

David A. Faber
Senior United States District Judge