IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ET AL., | ) ) ) | |
| Plaintiffs | ) ) | Case No. 7:16-CV-462 |
| v. | ) ) ) | |
| SOUTHERN COAL CORPORATION, ET AL., | ) ) ) | By: Michael F. Urbanski Chief United States District Judge |
| Defendants | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the plaintiffs' motion to compel compliance with the Consent Decree entered December 12, 2016, and the defendants' motion for judicial resolution. For the following reasons, the court will **GRANT** the Motion to Compel Compliance, ECF No. 25, and require payments of stipulated penalties in the amount of $2,544,000 along with additional stabilization work to certain sites as required by the Tennessee Department of Environment and Conservation ("TDEC"). In so doing, the court **GRANTS** defendants' Motion for Judicial Resolution, ECF No. 42, pursuant to § XII, ¶ 112 of the Consent Decree, ECF No. 21, and resolves the disputed issues herein.

I. **Background**

On September 30, 2016, the United States, Alabama, Kentucky, Tennessee, and Virginia collectively filed suit against Southern Coal Corporation and several other entities[1] for violation of the Clean Water Act ("CWA"), the Alabama Water Pollution Control Act, Kentucky Revised Statutes §§ 224.99–020 and 224.99–010, the Tennessee Water Quality Control Act, and the Virginia State Water Control Act. Compl. ¶ 1, ECF No. 1. The complaint also alleged violation of the conditions and limitations of the National Pollutant Discharge Elimination System ("NPDES") permits[2] issued to the defendants by Alabama, Kentucky, Tennessee, Virginia, and West Virginia, and failure to timely and/or fully respond to the EPA's requests for information, in violation of Section 308(a) of the Clean Water Act. Id. ¶¶ 2–3. The complaint sought injunctive relief and civil penalties. Id. ¶ 4.

That same day, the United States filed a notice that it was lodging a proposed Consent Decree that would resolve all asserted claims. ECF No. 2. The United States informed the court it would publish in the Federal Register a notice that the proposed Consent Decree had been lodged with the court. The notice solicited public comment for 30 days. On December 9, 2016, the United States filed an unopposed motion to enter the Consent Decree. ECF No.

---

[1] The following entities were named as defendants: Southern Coal Corporation; Justice Coal of Alabama, LLC; A & G Coal Corporation; Four Star Resources LLC; Infinity Energy, Inc.; Kentucky Fuel Corporation; Sequoia Energy, LLC; Virginia Fuel Corporation; National Coal, LLC; Premium Coal Company, Incorporated; S and H Mining Inc.; Airway Resources, L.L.C.; Baden Reclamation Company; Black River Coal, LLC; Chestnut Land Holdings, LLC; Meg-Lynn Land Company, Inc.; Nine Mile Mining, Inc.; Cane Patch Mining, Co. Inc.; Bluestone Resources Inc.; Dynamic Energy, Inc.; Greenthorn, LLC; Justice Highwall Mining, Inc.; National Resources, Inc.; Nufac Mining Company, Inc.; Pay Car Mining, Inc.; Second Sterling Corp.; and Newgate Development of Beckley, LLC.

[2] Pursuant to 33 U.S.C. §§ 1311(a) and 1342, an NPDES permit allows its holder to discharge a certain amount of pollutants into the water under the conditions the permit sets forth. Hughey v. JMS Dev. Corp. 78 F.3d 1523, 1525 (11th Cir. 1996). Both the federal government and states may issue NPDES permits. 33 U.S.C. § 1342(a)–(b).

2

17. The court granted that motion on December 12, 2016, and entered the Consent Decree on December 19, 2016. ECF Nos. 20, 21.

The Consent Decree provides that it applies to facilities in Tennessee and Alabama "owned and/or operated by Defendants, their direct or indirect subsidiaries or affiliates, or an entity that shares common ownership with any other Defendants, and were ever subject to or should have been subject to permitting under SMCRA [Surface Mining Control and Reclamation Act, 30 U.S.C. § 1256] and/or NPDES." Consent Decree, ECF No. 21, at ¶¶ 7, 14dd. The Consent Decree provides that "[t]he obligations of this Consent Decree apply to and are binding upon the United States and the States, and upon Defendants." Id. at ¶ 6.

On September 2, 2020, the United States sent a Demand for Stipulated Penalties and Notice of Default (the "Penalty Demand" or "U.S. Demand") to defendants Southern Coal Corporation ("Southern Coal" or "SCC"), Premium Coal Company, Inc. ("Premium Coal"), National Coal, LLC, and Justice Coal of Alabama, LLC ("Justice Coal of Alabama"), for their alleged failures to comply with the Consent Decree. Penalty Demand, ECF No. 26-4. The Penalty Demand claimed that these entities breached the Consent Decree with respect to certain facilities in Tennessee and Alabama by failing to timely renew NPDES permits and by allowing unpermitted discharges. The Penalty Demand sought payment of $3,192,000 in Stipulated Penalties[3] and demanded that these entities take all necessary steps to cease unpermitted discharges at three Tennessee sites. Should this work not be completed, the United States advised that the EPA would implement the procedures provided for in ¶¶ 67–

---

[3] While the Penalty Demand indicated that the defendants named in the letter failed to timely submit applications to renew eleven NPDES permits in Tennessee and three in Alabama, it only sought Stipulated Penalties relating to the three sites in Tennessee and one site in Alabama that had unpermitted discharges.

3

74 of the Consent Decree regarding an EPA drawdown on their required financial assurances and would initiate a third-party Trustee's responsibility to hire and fund contractors to perform the work in accordance with ¶ 68 of the Consent Decree.

On March 11, 2021, the United States, Alabama, and Tennessee collectively filed a Motion to Compel Compliance with the Consent Decree against three companies subject to the Consent Decree responsible for certain mining operations in Tennessee and Alabama with unpermitted discharges, Southern Coal, Premium Coal, and Justice Coal of Alabama. Pls.' Mot. Compel Compliance, ECF No. 25.[4]

Southern Coal provides environmental management for defendants' overall coal operations. "In 2013, SCC advised the State of Alabama, State of Kentucky, the Knoxville, Tennessee Office of Surface Mining, and the Commonwealth of Virginia, that SCC as a coal company and major landowner of substantial acreage in those states, was providing managers and supervisors at its properties and coal mining operations with authority and resources necessary to carry out environmental management and environmental compliance." Compl., ECF No. 1, at ¶ 9. The complaint alleges that Southern Coal, Premium Coal, and Justice Coal of Alabama have common ownership. Southern Coal is the parent corporation of Premium Coal, and Premium Coal has been included in Southern Coal 's consolidated tax returns. Id. The complaint alleges that "[i]n 2012, James C. Justice, II, James C Justice, III, and Jillian L.

---

[4] While National Coal, LLC, was named in the Penalty Demand, it was not a party to the Motion to Compel Compliance. Plaintiffs explained: "The U.S. Demand also included Defendant National Coal, LLC for its failure to timely submit permit applications and/or maintain required permit coverage pursuant to the CWA NPDES at sites in Tennessee, but TDEC determined that because the sites were sufficiently stable enough to protect water quality, new permits are not now required. As a result, the United States did not seek work at the National Coal, LLC sites (or at five Premium Coal Company, Inc. sites), or stipulated penalties for National Coal, LLC's permit application violations." Pls.' Mem. Supp. Mot. Compel Compliance, ECF No. 26, at 8 n.7.

4

Justice were the record owners of all of the outstanding stock of SCC [Southern Coal]," id., and that these three persons also "were the record owners of all of the outstanding stock of Justice Coal of Alabama, LLC." Id. at ¶ 10.

The complaint alleges that Premium Coal "is subject to NPDES permit requirements in Tennessee. Premium Coal Company, Incorporated is a wholly-owned subsidiary of SCC. Premium Coal Company, Incorporated's overall environmental compliance is managed by SCC." Id. at ¶ 18. Premium Coal was the discharger authorized under NPDES permits issued by the Tennessee Department of Environment and Conservation ("TDEC") for Refuse Area #2 (NPDES Permit No. TN0063592), Mine 5A (NPDES Permit No. TN0069159), and Mine 20 (NPDES Permit No. TN0079570). These NPDES Permits were issued on May 7, 2015 and expired on May 6, 2020. See NPDES Permits, ECF Nos. 54-2, 54-3, and 54-1.

The complaint alleges that "Justice Coal of Alabama, LLC (fka Alabama Carbon, LLC) is an Alabama limited liability company . . . subject to NPDES requirements in Alabama. . . ." Compl., ECF No. 1, at ¶ 10. Justice Coal of Alabama was the discharger authorized under NPDES permits issued by the Alabama Department of Environmental Management ("ADEM") for the Poore Kirby Mine (NPDES Permit No. AL0078867). This NPDES Permit was issued on May 16, 2014, and expired on May 15, 2019. See NPDES Permit, ECF No. 54-4.

This case was transferred to the undersigned on April 16, 2021. On May 4, 2021, the defendants filed a motion for judicial resolution of the dispute. After holding a hearing on the motions on May 14, 2021, the court directed the parties to submit additional briefing and referred the matter to the Honorable Robert S. Ballou, United States Magistrate Judge, for

mediation. Judge Ballou held a settlement conference on August 10, 2021, but the parties were unable to reach an agreement. See ECF No. 60. In the court's view, this settlement conference amply satisfies the informal dispute resolution provision of the Consent Decree. Consent Decree, ECF No. 21, § XII, ¶ 109. The parties have submitted their supplemental briefs, and the motions are ripe for decision.

## II. Applicable Law

"[T]he scope of a consent decree must be discerned from within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." United States v. Armour & Co., 402 U.S. 673, 682 (1971). Indeed, "[c]onsent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation." Id. at 681. And because the defendants have waived their rights under the Due Process Clause to litigate the issues, "the conditions upon which [they] [have] given that waiver must be respected, and the instrument must be construed as it is written and not as it might have been written had the plaintiff[s] established [their] factual claims and legal theories in litigation." Id. at 682; see Johnson v. Robinson, 987 F.2d 1043, 1046 (4th Cir. 1993) ("Even given their distinctive character as agreements backed by the authority of the court, consent decrees are to be interpreted as contracts.").

Under general contract interpretation principles, "[a] court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co., LLC, 276 Va. 346, 352, 666

6

S.E.2d 527, 531 (2008); see also RLI Ins. Co. v. Nexus Servs. Inc., 470 F. Supp. 3d 564, 579 (W.D. Va. 2020) (noting that, under Illinois law, "[c]ontract interpretation is intended to give effect to the intent of the contracting parties," and "[w]here a contract is not ambiguous or uncertain, its meaning must be determined from the words or language used, and the court cannot place a construction on the contract which is contrary to or different from the plain and obvious meaning of the language") (internal quotation marks and citations omitted). Indeed, "a contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose." RLI, 470 F. Supp. 3d at 580 (internal quotations omitted). The court therefore presumes that the parties "have not used words needlessly," and will not treat any term as meaningless so long as "a reasonable meaning can be assigned to it . . . ." CNX Gas, 276 Va. at 353, 666 S.E.2d at 531. Lastly, the court "consider[s] the document as a whole" when interpreting specific provisions of the contract. Id.

### III. Motion to Compel Compliance

Plaintiffs assert that the defendants have failed to timely comply with all work requirements under the Consent Decree and have not paid $3,192,000 in accrued, stipulated penalties. Pls.' Mem. Supp. Mot. Compel Compliance, ECF No. 26, at 6–7. Specifically, plaintiffs contend that defendants breached the Consent Decree by (1) failing to maintain NPDES permits and/or submit required NPDES permit applications, and (2) complete all necessary work at various Tennessee sites on time. Id. at 7. In their Penalty Demand and Motion to Compel Compliance, plaintiffs assert that defendants failed to maintain permit coverage at eleven sites in Tennessee and allowed unpermitted discharges at three of those

sites, Refuse Area #2, Mine 5A, and Mine 20. Id. at 3; Ex. 4, ECF No. 26-4, at 3, 6. Moreover, defendants failed to submit timely NPDES permit applications for three NPDES permits in Alabama, resulting in the failure to maintain permit coverage and unpermitted discharges at one site in Alabama, the Poore Kirby Mine. ECF No. 26, at 3; Ex. 4, ECF No. 26-4, at 3, 10.

Defendants do not contest the lapse in NPDES permit coverage, but instead contend that plaintiffs' demands exceed the Consent Decree's scope. They argue that the Consent Decree "includes no requirement that Defendants renew their NPDES permits or comply with permit terms that require such renewal." Defs.' Mem. Opp'n Mot. Compel Compliance, ECF No. 28, at 2. Nor does it "establish an affirmative requirement to follow, as a condition of the decree, all state and federal laws, or the terms of the NPDES permits." Id. at 4. In essence, defendants argue that they can end run the Consent Decree by allowing existing NPDES permits at covered facilities to lapse. The court does not agree.

The Consent Decree resolved the lawsuit filed by plaintiffs for violations of federal and state environmental laws. At the forefront of the Complaint were allegations that defendants "violated the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits." Compl., ECF No. 1, at ¶ 2. Specifically, the Complaint alleged that Southern Coal and Justice Coal of Alabama had 303 permit violations in Alabama and that Southern Coal affiliates, including Premium Coal, had 781 permit violations in Tennessee. See ECF No. 1-1, 1-3, and 1-6. The Complaint alleged permit violations in Alabama and Tennessee by exceeding effluent limitations, failing to perform and complete discharge samplings, and failing to submit Discharge Monitoring Reports (DMRs). Compl., ECF No. 1, at ¶¶ 166-197, 230-261. The Complaint also alleged that National Coal, LLC, and/or Premium Coal

8

discharged pollutants into waters of Tennessee without an NPDES permit, and that these entities, along with Southern Coal as operator, were liable for injunctive relief and damages for such violations. Id.

The Consent Decree reiterated that the Complaint charged defendants with violating the conditions and limitations of NPDES permits issued to them, and indicated that the Consent Decree was a good faith, negotiated resolution that was fair, reasonable and in the public interest. Consent Decree, ECF No. 21, § I.F.

The plain meaning of the Consent Decree requires defendants to maintain and comply with NPDES permits for the Consent Decree's term. In § VI, entitled General Compliance Requirements, ¶ 22 requires that defendants "perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits." Id. ¶ 22. Paragraph 29, also in the General Compliance Requirements section, states that "[w]here any compliance obligation under this Decree requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals." Id. ¶ 29. Paragraph 63, which falls under Consent Decree § VIII Financial Assurance, stipulates that "[f]or purposes of this section, the Work is defined as Sections VI (General Compliance Requirements), VII (Injunctive Relief), and IX (Reporting and Certification Requirements) of this Consent Decree, and taking all necessary additional actions to comply with the Defendants' NPDES permits for the term of the Consent Decree." Consent Decree, ECF No. 21, at ¶ 63. The subject of the complaint, remedied by the Consent Decree, was defendants' violations of NPDES permits at its mining facilities. Under the plain

language of the Consent Decree, defendants are obliged to maintain NPDES permits for those facilities.

Defendants seek to attribute significance to the Consent Decree's capitalization of the term "Work" in ¶ 63 relating to Financial Assurance, while the term "work" appears in lower case in ¶ 22, relating to General Compliance Requirements. The capitalization of the term "Work" in ¶ 63 in no respect alters the obligations imposed by the Consent Decree of the defendants to keep their NPDES permits current at covered facilities. The terms "work" in ¶ 22 and "Work" in ¶ 63 are not mutually exclusive. Indeed, the definition of "Work" in ¶ 63 encompasses the General Compliance Requirements of § VI, of which ¶ 22 is a part. Rather, these two paragraphs, read in harmony with the entirety of the Consent Decree, reaffirm defendants' obligations to comply with NPDES permit obligations for their mining facilities instead of shirking them by allowing required NPDES permits to lapse.

Defendants nonetheless argue that even if the Consent Decree does impose NPDES permit compliance obligations, plaintiffs are only entitled to stipulated penalties for the defendants' failure to timely submit timely renewal applications for three sites in Alabama, as they were the only permits requiring renewal that were in effect at the time of the alleged violations. Defs.' Suppl. Mem. Opp'n Mot. Compel Compliance, ECF No. 53, at 2. The three NPDES permits for facilities in Tennessee expired in May 2020, and the NPDES permit for the Poore Kirby Mine in Alabama expired in May 2019. Id. at 4. Defendants argue that the expiration of the permits means that defendants only violated the CWA—and not the Consent Decree—by failing to maintain NDPES permit coverage and for emitting unpermitted discharges at their facilities in Tennessee and Alabama. Id. at 3–4. Defendants assert that the

10

continued operation of their facilities without NPDES permits may run afoul of the CWA, but does not violate the Consent Decree.

Again, the court is not persuaded. The Consent Decree defines "Facility" or "Facilities" to mean mining operations subject to SMCRA or the CWA owned by defendants during the term of the Consent Decree and "were ever subject to or should have been subject to permitting under SMCRA and/or NPDES." Consent Decree, ECF No. 21, at § IV, ¶ 14dd. As such, the Consent Decree applies to every mining facility owned by defendants that had been permitted, or should have been permitted, regardless of whether defendants had allowed such permits to lapse. When considered together with the requirements of ¶¶ 22, 29, and 63, the Consent Decree plainly obligates defendants to obtain and maintain NPDES permits at each of their mining facilities subject to NPDES permitting or where NPDES permits should have been required. Defendants cannot evade compliance with the Consent Decree by allowing NPDES permits to lapse at covered facilities and claim that plaintiffs must bring new lawsuits under the CWA. That would undermine the entire purpose of the Consent Decree.

Indeed, adopting the defendants' proposed interpretation of the Consent Decree would generate absurd results. Indeed, if the Consent Decree did not bar the defendants from operating sites without NPDES permits, they could avoid the Consent Decree's requirements altogether by simply allowing their permits to expire. Given that (1) "a contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose," and (2) "the court cannot place a construction on the contract which is contrary to or different from the plain and obvious meaning of the language," RLI, 407 F. Supp. 3d at 579–80, the

11

court cannot agree with defendants that the Consent Decree allows defendants to operate facilities subject to the Consent Decree with expired permits.

In sum, the court finds that the defendants have violated the Consent Decree by failing to maintain NPDES permits for the sites in Alabama and Tennessee where pollutants were unlawfully discharged. Further, defendants Southern Coal and Premium Coal have violated the terms of the Consent Decree by failing to complete necessary stabilization work at three Tennessee sites on time.

## IV. Stipulated Penalties

Plaintiffs have demanded $3,192,000 in stipulated penalties for defendants' Consent Decree violations. Paragraph 85 sets forth the stipulated penalties that accrue per day for each violation of the Consent Decree:

> 85. <u>Non-Compliance with Consent Decree</u>. The following stipulated penalties shall accrue per violation per Day for each violation of any requirement of this Consent Decree, except as provided in Paragraphs 86-89:
>
> | <u>Penalty Violation Per Day</u> | <u>Period of Noncompliance</u> |
> |---|---|
> | $1000 per Day or portion thereof | 1st through 14th Day |
> | $2500 per Day or portion thereof | 15th through 30th Day |
> | $4500 per Day or portion thereof | 31st Day and beyond |

Consent Decree ¶ 85.

### A. Tennessee Stipulated Penalties

The Penalty Demand sent September 2, 2020, to defendants asserts that Premium Coal has accrued $1,258,500 in stipulated penalties for three facilities in Tennessee. ECF No. 26-4, at 6. Specifically, Premium Coal incurred $418,500 in penalties at three separate Tennessee facilities: Refuse Area #2, Mine 5A, and Mine 20 (Permit Numbers TN0063592, TN69159,

12

and TN0079570) for lapsed permit coverage, totaling $1,255,500. The remaining $3,000 in penalties represent $1,000 penalties for each of the three unpermitted discharges at these facilities.

On September 21, 2020, the TDEC Division of Water Resources – Mining Section, wrote defendants Southern Coal and Premium Coal about the status of their eleven lapsed NPDES permits, including the expired permits for Refuse Area #2, Mine 5A, and Mine 20. TDEC Letter, Sept. 21, 2020, ECF No. 28-1. In this letter, TDEC advised that while additional stabilization measures were necessary for Refuse Area #2, Mine 5A, and Mine 20, individual NPDES permits were not now required, and the incomplete applications previously received could be withdrawn. The letter states that TDEC's Division of Water Resources was "in receipt of incomplete applications for NPDES permits for the above referenced facilities. You may submit a request to withdraw these applications to the Mining Section . . . . No further action, aside from the above-mentioned stabilization measures and withdrawal of applications, is required at this time." Id. at 3.

Southern Coal and Premium Coal argue that position taken by TDEC on September 21, 2020 that NPDES permits were no longer required for Refuse Area #2, Mine 5A, and Mine 20 undermines plaintiffs' September 2, 2020 Penalty Demand for stipulated penalties in the amount of $1,255,500 for lapsed NPDES permits at those facilities. The court cannot agree. The NPDES permits for these three facilities expired on May 6, 2020, and each site had an unpermitted discharge in the summer of 2020. The fact that TDEC later determined that NPDES permits would no longer be required for these facilities does not erase the violation of the Consent Decree presented by the permit lapses and unpermitted discharges. In this

13

regard, it is worth noting that plaintiffs have not sought stipulated penalties for violations of the Consent Decree at the eight other Tennessee sites with lapsed NPDES permits, and only seek penalties for the three sites at which Southern Coal and Premium Coal allowed unpermitted discharges. Moreover, the stipulated penalties do not cover the entire period of the violation as they are cut off on August 25, 2020, a month before TDEC advised defendants that NPDES permits were no longer needed at the eleven lapsed Tennessee sites.

Southern Coal and Premium Coal ask the court to follow the ruling in United States v. Witco Corp., 76 F. Supp. 2d 519, 530 (D. Del. 1999), where the court adopted a reasonableness requirement for enforcement of stipulated penalties in an EPA Consent Decree, but that decision affords them no refuge. Because plaintiffs seek stipulated penalties for only three of the eleven sites at which defendants allowed the NPDES permits to lapse in violation of the Consent Decree and do not seek penalties for the entire lapse period, the court finds the stipulated penalties sought to be reasonable.

The Penalty Demand also required Southern Coal and Premium Coal to undertake additional stabilization measures for the Refuse Area #2, Mine 5A and Mine 20 sites.[5] At the time of the briefing and argument in this case, plaintiffs were uncertain whether additional

---

[5] The Penalty Demand seeks no monetary stipulated penalties associated with those additional stabilization efforts. As plaintiffs explain in footnote 6 of their memorandum in support of their motion to compel compliance with the Consent Decree, costs associated with these stabilization activities fall outside of the relief sought in the pending Motion to Compel Compliance. ECF No. 26, at 7 n.6. "Due to the Defendants Southern Coal Corporation's and Premium Coal Company's, Inc.'s failure to timely implement and complete the necessary work as required in the U.S. Demand, on December 11, 2020, the United States withdrew $1,500,000 under the Defendants' financial assurance as provided under ¶ 68 of the CD initiating the procedures for a third party Trustee to complete the work." Id. As both footnote 6 and the Declaration of Daniel Lawrence, Program Coordinator, Division of Water Resources – Mining Section, Knoxville Environmental Field Office, TDEC, reflect, defendants' contractors performed additional stabilization work at these three sites, completing a winter stabilization punch list as directed by TDEC on or around January 11, 2021. Lawrence Decl., ECF No. 26-5, at 3.

stabilization efforts would be needed at Refuse Area #2, Mine 5A, and Mine 20 to halt discharges following the spring thaw. Pls.' Rebuttal Mem., ECF No. 30, at 10. To the extent that TDEC determines under the Consent Decree that additional stabilization efforts remain necessary at these facilities, the court **ORDERS** Southern Coal and Premium Coal to complete these additional stabilization efforts within sixty (60) days.

### B. Alabama Stipulated Penalties

The September 2, 2020, Penalty Demand also asserts that Justice Coal of Alabama incurred $1,933,500 in stipulated penalties for three sites in Alabama: Crane Central Mine, Glade Preparation Plant, and Poore Kirby Mine. ECF No. 26-4 at 10. Poore Kirby Mine accrued the vast majority of these penalties, accounting for all but $2,000 of the accrued penalties.[6] Id. $1,912,500 of these penalties are for lapsed permit coverage, and $18,000 are for unpermitted discharges at the Poore Kirby Mine. Id. Plaintiffs' Penalty Demand for lapse in NPDES permit coverage at the Poore Kirby Mine covers the period May 16, 2019, to July 31, 2020. Defendants acknowledge their failure to timely submit the renewal application for the Poore Kirby Mine NPDES permit, but dispute that they are liable for stipulated penalties for the entire period covered by plaintiffs' Penalty Demand.

The NPDES permit for the Poore Kirby Mine expired on May 15, 2019. As plaintiffs explain:

> The permitting process, including permit renewal, is not a paperwork exercise. It is a substantive and substantial review of conditions at the facility and the receiving waters necessary to protect public health and the environment The CWA [Clean

---

[6] The Penalty Demand included $1,000 in stipulated penalties for failure to submit timely application for the Crane Central Mine, Glade Preparation Plant, and Poore Kirby Mine. Defendants admit these stipulated penalties. Defs.' Suppl. Mem. Opp'n Mot. Compel Compliance, ECF No. 53, at 3.

15

> Water Act] allows for automatic extension of a permit provided that an application is received 180 days prior to the permit's expiration date. Failures on the part of dischargers to adhere to this process eliminates the necessary review of environmental conditions on the ground by regulators who are charged with and have the technical expertise in performing such evaluations.

ECF No. 54, at 8. Justice Coal of Alabama did not meet this 180-day deadline, instead filing an incomplete renewal application on March 6, 2019. Because the renewal application was not filed 180 days prior to the date of expiration, the Poore Kirby Mine NPDES permit was not administratively continued past its expiration date of May 15, 2019. Ultimately, ADEM considered the Poore Kirby Mine renewal application complete as of August 1, 2019. See ADEM Letter, March 23, 2020, ECF No. 42-1, at 26; Pls.' Poore Kirby Mine NPDES Permit No. AL0078867 Timeline, ECF No. 54-9.

ADEM mailed a draft permit to Justice Coal of Alabama on October 23, 2020, and the new NPDES permit issued on January 13, 2021. During the period where no permit was in place for the Poore Kirby Mine, May 15, 2019 to January 13, 2021, there were eighteen unpermitted discharges at this site. ECF No. 26-4 at 10; ECF 54-9 at 2. Plaintiffs seek stipulated penalties for a portion of the lapsed permit period, May 16, 2019 to July 31, 2020, totaling $1,912,500. While the September 2, 2020 Penalty Demand indicated "that stipulated penalties continue to accrue until the violations have been addressed," ECF No. 26-4, at 3, plaintiffs have not sought stipulated penalties beyond those claimed therein.

Southern Coal and Justice Coal of Alabama argue that ADEM is partially responsible for the delay in the issuance of the Poore Kirby NPDES permit because it erroneously asserted in its letter of March 23, 2020 that defendants' operations needed approval from the Alabama Surfacing Mining Commission. The letter stated:

16

> An application for an NPDES permit for the type of operations proposed by Justice Coal of Alabama, LLC is not a complete application if it has not been submitted to and accepted by the Alabama Surfac[e] Mining Commission (ASMC) in compliance with a Memorandum of Agreement with ASMC regarding activities of this type in Alabama. The ASMC made a determination to deny the application submitted by Justice Coal of Alabama, LLC on February 6, 2020, due to the renewal application not being completed in a timely manner. As a result, the NPDES Permit Application was rendered incomplete.

ADEM Letter, March 23, 2020, ECF No. 42-1, at 26. Defendants assert that the Poore Kirby Mine was not an active mine and could not obtain a state mining permit. "This Catch-22 persisted until ADEM eventually conceded that it had erred and the NPDES permit could issue without a predicate mining permit." Defs.' Opp. Mot. Compel Compliance, ECF No. 28, at 5. Plaintiffs nowhere take issue with this assertion, relying exclusively on their argument that defendants waived any right to challenge the stipulated penalties in the Consent Decree. See Plaintiffs' Summ. Defs.' Violations of the Express Agreed-Upon Terms of the Consent Decree, ECF No. 54, at 9.

Defendants' failure to timely submit the renewal for the NPDES permit for the Poore Kirby Mine violates the Consent Decree, and plaintiffs are entitled to stipulated penalties. Crediting defendants' unrebutted assertion that the delay in obtaining the permit was due in part to ADEM's mistaken assumption that mining operations were ongoing at the Poore Kirby Mine,[7] some reduction in the stipulated penalties for lapse of permit coverage is appropriate. Accordingly, the court will impose stipulated penalties for the lapse in the Poore Kirby Mine only through March 23, 2020, the date ADEM advised plaintiffs that it was denying the Poore

---

[7] See, e.g., Defs.' Opp. To Mot. Compel Compliance, ECF No. 28, at 5 ("Poore Kirby could not obtain a mining permit because it was not an active mine.").

17

Kirby Mine NPDES renewal because of lack of approval by the ASMC. The stipulated penalties for the period May 16, 2019 to March 23, 2020 is $1,264,500. The court also will **ORDER** payment of $3,000 in Stipulated Penalties for failing to submit timely applications for the Crane Central Mine, Glade Preparation Plant, and Poore Kirby Mine as well as $1,000 for each of the eighteen unpermitted discharges. In sum, the court **ORDERS** Southern Coal and Justice Coal of Alabama to pay Stipulated Penalties for the Alabama violations in the amount of $1,285,500.

### V.    Motion for Judicial Resolution

In this memorandum opinion, the court addresses the arguments raised by defendants in their motion for judicial resolution. As such, the Motion for Judicial Resolution is **GRANTED** consistent with the ruling herein.

### VI.    Conclusion

The court **GRANTS** plaintiffs' Motion to Compel Compliance, ECF No. 25, and, to the extent consistent therewith, defendants' Motion for Judicial Resolution, ECF No. 42. Defendants Southern Coal and Premium Coal are **ORDERED** to pay plaintiffs $1,258,500 in Stipulated Penalties for the Tennessee violations of the Consent Decree within thirty (30) days, and complete any additional stabilization work required by TDEC at Refuse Area #2, Mine 5A, and Mine 20 within sixty (60) days. Defendants Southern Coal and Justice Coal of Alabama are **ORDERED** to pay plaintiffs $1,285,500 in Stipulated Penalties within thirty (30) days.

An appropriate Order will be entered.

Entered: December 7, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.12.07 11:12:08
-05'00'

Michael F. Urbanski
Chief United States District Judge

19